**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RAYMOND LEE,

Petitioner,

v.

THE BOEING COMPANY,

No. 96-2399

INCORPORATED; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,

Respondents.

On Petition for Review of an Order
of the Benefits Review Board.
(94-776)

Argued: June 5, 1997

Decided: September 5, 1997

Before HALL and MURNAGHAN, Circuit Judges, and
GARBIS, United States District Judge for the
District of Maryland, sitting by designation.

_____

Dismissed and transferred by published opinion. Judge Murnaghan
wrote the majority opinion, in which Judge Garbis joined. Judge Hall
wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Timothy Augustus Dixon, BLUM, YUMKAS, MAIL-
MAN, GUTMAN & DENICK, P.A., Baltimore, Maryland, for Peti-

tioner. Michael Alan Barcott, FAULKNER, BANFIELD, DOOGAN & HOLMES, Seattle, Washington, for Respondents.

_____

**OPINION**

MURNAGHAN, Circuit Judge:

Claimant-Appellant Raymond Lee suffered severe injuries in an automobile accident in the Kingdom of Saudi Arabia ("Saudi Arabia") in the course of his employment with United Support and Services Company ("USAS"), a Saudi Arabian company. USAS was a subcontractor for Appellee Boeing Middle East Limited ("Boeing"). Boeing began paying Lee monthly disability benefits pursuant to the Defense Base Act ("DBA"), 42 U.S.C.A. §§ 1651-1654 (West 1994). Lee also began receiving monthly disability benefits pursuant to the Occupational Hazards Branch of the Social Insurance Laws of Saudi Arabia (the "Saudi Arabian Social Insurance Law").

Boeing later discontinued its monthly payments on the ground that it was entitled to a credit pursuant to section 3(e) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C.A. § 903(e) (West 1986), for the benefits that Lee received under the Saudi Arabian Social Insurance Law. A United States Department of Labor administrative law judge ("ALJ") concluded that Boeing was indeed entitled to a credit pursuant to section 3(e) of the LHWCA. The United States Department of Labor Benefits Review Board (the "Board") affirmed the ALJ's decision. Lee then filed a petition to review the Board's decision in the Fourth Circuit. For the reasons stated below, we conclude that we lack jurisdiction to review Lee's appeal, and we transfer the case to the District Court for the District of Maryland.

I.

Boeing was the prime contractor on the Peace Shield Program in Saudi Arabia from 1986 to 1992. The Peace Shield Program was a joint United States/Saudi Arabian defense project administered by the United States Air Force for the United States Department of Defense.

2

USAS was one of Boeing's subcontractors, and Lee worked for USAS.

Pursuant to an agreement with USAS on February 26, 1990, Boeing agreed to provide workers' compensation coverage pursuant to the DBA to USAS's American employees working in Saudi Arabia. Since USAS is a Saudi Arabian company, it is not obligated to provide DBA benefits to its employees. The Saudi Arabian Social Insurance Law, however, requires USAS to pay premiums to the General Organization for Social Insurance (the "General Organization") for its employees. The General Organization is the Saudi Arabian governmental body that administers the Saudi Arabian Social Insurance Law. It ensures that a claimant who has sustained an employment injury receives medical care, disability benefits, and other enumerated benefits.

On March 20, 1990, Lee sustained catastrophic injuries in an automobile accident in Riyadh, Saudi Arabia. The injuries left Lee totally and permanently paralyzed from the neck down. Lee remained hospitalized in Saudi Arabia for a short period of time after the accident. Around March 30, 1990, however, Lee was transferred to a hospital in the United States. Pursuant to the DBA and section 7(a) of the LHWCA, 33 U.S.C.A. § 907 (West 1986),[1] Boeing paid for all of Lee's medical care and treatment.

On November 29, 1991, a district director in the Office of Workers' Compensation Programs issued a compensation order in Lee's favor that directed Boeing to pay Lee $660.62 per week, subject to future adjustment, in permanent total disability benefits pursuant to the DBA and the LHWCA. On July 1, 1990, Boeing began making weekly permanent disability payments to Lee.[2]

_____

[1] The DBA incorporates the provisions of the LHWCA except to the extent that provisions of the DBA expressly modify the LHWCA. See 42 U.S.C.A. § 1651(a).

[2] Boeing paid Lee $660.62 per week from July 1, 1990 to September 30, 1990, $683 per week from October 1, 1990 to September 30, 1991, $701 per week from October 1, 1991 to September 30, 1992, and $722 per week from October 1, 1992 to February 8, 1993.

3

The Saudi Arabian General Organization refused to pay for the medical care that Lee received after he left Saudi Arabia. However, the General Organization does pay Lee $5,330.25 per month in disability benefits. That monthly payment includes $3,135.60 in permanent total disability benefits, $1,567.80 as an allowance for the help that Lee needs to carry on his daily activities, and $626.85 as an allowance for his dependent family members.

On November 3, 1992, Boeing requested a conference with a district director in the Office of Workers' Compensation Programs. Boeing sought a credit, pursuant to section 3(e) of the LHWCA, for the benefits that Lee had received under the Saudi Arabian Social Insurance Law.[3] On February 3, 1993, the district director vacated the prior compensation order in response to Boeing's request. Boeing ceased paying weekly disability benefits to Lee on February 9, 1993.

Lee requested an ALJ hearing. The parties filed cross-motions for summary decision with the ALJ and submitted a joint statement of facts with affidavits and exhibits. On January 24, 1994, the ALJ granted Boeing's motion for summary decision. The ALJ held that the DBA incorporates section 3(e) of the LHWCA and that the Saudi Arabian Social Insurance Law is a "workers' compensation law" within the meaning of section 3(e). The ALJ therefore concluded that Boeing was entitled to a credit pursuant to section 3(e) of the LHWCA for the payments that Lee received under the Saudi Arabian Social Insurance Law.

On February 23, 1994, Lee appealed the ALJ's decision to the Board. On September 12, 1996, the Board notified the parties that it deemed the ALJ's decision affirmed since the appeal had been pending for over one year.[4] Lee subsequently filed a petition for review in the Fourth Circuit.

_____

[3] Section 3(e) of the LHWCA provides as follows:

> Notwithstanding any other provision of law, any amounts paid to an employee for the same injury, disability, or death for which benefits are claimed under this chapter pursuant to any other workers' compensation law . . . shall be credited against any liability imposed by this chapter.

33 U.S.C.A. § 903(e).

[4] The Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, provides that appeals pending

4

II.

Boeing raises an initial jurisdictional question. It asserts that jurisdiction over the instant appeals lies in the United States District Court for the District of Maryland, not in the Fourth Circuit. Boeing therefore urges us to dismiss the appeal. Lee argues that section 21(c) of the LHWCA, 33 U.S.C.A. § 921(c) (West 1986), properly gives us jurisdiction to review the Board's order. In order to resolve the jurisdictional question, we must examine the interplay between the LHWCA and the DBA.

A.

Congress enacted the LHWCA in 1927 to ensure that all employees engaged in maritime employment receive workers' compensation coverage. See Home Indem. Co. v. Stillwell, 597 F.2d 87, 88 (6th Cir. 1979). The LHWCA requires employers to secure the payment of compensation payable under the LHWCA to their employees. See 33 U.S.C.A. § 904 (West 1986). Congress enacted the DBA in 1941, and it provides workers' compensation coverage for certain employees working outside the continental United States at military bases or on other national defense projects. See 42 U.S.C.A. § 1651. The provisions of the LHWCA govern a workers' compensation claim under the DBA except to the extent that the DBA modifies a provision of the LHWCA. Section 1 of the DBA provides that " [e]xcept as herein modified, the provisions of the Longshore and Harbor Workers' Compensation Act, . . . as amended . . ., shall apply in respect to the injury or death of any employee engaged in any [covered] employment." 42 U.S.C.A. § 1651(a) (emphasis added). Thus, if a provision of the DBA modifies the LHWCA, the DBA provision controls in a DBA case. See AFIA/CIGNA Worldwide v. Felkner, 930 F.2d 1111, 1113 (5th Cir. 1991).

Prior to 1972, initial review of administrative compensation orders in both LHWCA and DBA cases was judicial only. See AFIA/CIGNA Worldwide, 930 F.2d at 1113. Section 21(b) of the LHWCA provided

_____

before the Board for more than one year shall be deemed affirmed by the Board on September 12, 1996 if the Board has not acted by that date.

that the review was by injunction proceedings "in the federal district court for the judicial district in which the injury occurred." Id. (quoting 33 U.S.C. § 921(b) (1970) (amended 1972)). Since the DBA applies only to overseas sites, however, the injury in DBA cases could not possibly occur within any federal judicial district. Congress therefore modified the judicial review provisions of the LHWCA and enacted section 3(b) of the DBA. Id. at 1113-14. Section 3(b) of the DBA provides as follows:

> Judicial proceedings provided under sections 18 and 21 of the Longshore and Harbor Workers' Compensation Act[33 U.S.C.A. §§ 918, 921] in respect to a compensation order made pursuant to [the DBA] shall be instituted <u>in the United States district court of the judicial district wherein is located the office of the deputy commissioner whose compensation order is involved</u> if his office is located in a judicial district, and if not so located, such judicial proceedings shall be instituted <u>in the judicial district nearest the base at which the injury or death occurs</u>.

42 U.S.C.A. § 1653(b) (first alteration in original) (emphasis added).

In 1972, Congress amended section 21(b) of the LHWCA to its current form and provided an initial level of administrative review to the newly created Board. <u>See</u> 33 U.S.C.A.§ 921(b) (West 1986); <u>Home Indem. Co.</u>, 597 F.2d at 90. Since the DBA contains no provisions that modify the administrative procedures set forth in the LHWCA, those procedures also apply to DBA claims pursuant to the general incorporation provision in section 1 of the DBA.**5** <u>See</u> <u>AFIA/CIGNA Worldwide</u>, 930 F.2d at 113. Thus, the procedures described in the LHWCA for filing a claim, obtaining an administrative determination by an ALJ, and initially appealing the ALJ's decision to the Board are exactly the same in LHWCA and DBA cases. <u>Id.</u> at 113-115.

_____

**5** Section 1 of the DBA incorporates the provisions of the LHWCA in force at the time Congress enacted the DBA and all subsequent LHWCA amendments unless such provisions or amendments conflict with one of the express modifying provisions of the DBA. <u>See</u> 42 U.S.C.A. § 1651(a); <u>AFIA/CIGNA Worldwide</u>, 930 F.2d at 1113 n.3.

However, the 1972 amendments also amended the judicial review provisions of the LHWCA to provide direct review of the Board's decision to the federal court of appeal where the injury occurred, not to the district court. See 33 U.S.C.A. § 921(c);[6] Home Indem. Co., 597 F.2d at 90. Congress has not, however, amended the judicial review provision of the DBA that expressly modified the former judicial review provisions of the LHWCA. Section 3(b) of the DBA still provides, as quoted above, that judicial review of compensation orders lies in the appropriate district court. Section 3(b) controls judicial review of compensation orders in DBA cases. See Home Indem. Co., 597 F.2d at 89 (holding that if a provision of the DBA specifically modifies a provision of the LHWCA, the DBA provision controls in a DBA case); AFIA/CIGNA Worldwide, 930 F.2d at 1115 (same).

Congress may have simply made an oversight in failing to amend section 3(b) of the DBA in 1972 when it amended the judicial review provisions of the LHWCA. Nonetheless, we must interpret an unambiguous statute according to its plain language. The Supreme Court has held:

> [I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then,

_____

[6] Section 21(c) of the LHWCA now provides in pertinent part as follows:

> Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside. . . . Upon such filing, the court shall have jurisdiction of the proceeding and shall have the power to give a decree affirming, modifying, or setting aside, in whole or in part, the order of the Board and enforcing same to the extent that such order is affirmed or modified.

33 U.S.C.A. § 921(c) (emphasis added).

7

> this first canon is also the last: "judicial inquiry is complete."

Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) (citations omitted). Section 3(b) of the DBA clearly and unambiguously provides that a party adversely affected by the administrative resolution of a DBA claim must file a petition for review in the United States district court where the office of the appropriate deputy commissioner is located. We therefore conclude that judicial review of DBA claims differs from judicial review of LHWCA claims. After the administrative determination and initial appeal to the Board, jurisdiction for judicial review in DBA cases lies in the appropriate district court, not in the court of appeals.**7**

In the instant case, the district director who issued the compensation order is located in Baltimore, Maryland. Thus, judicial review of the Board's order had to begin in the United States District Court for the District of Maryland. If Lee is dissatisfied with the district court's judgment, he may then appeal as of right to the Fourth Circuit. See 28 U.S.C.A. § 1294 (West 1993); AFIA/CIGNA Worldwide, 930 F.2d at 1116. However, the Fourth Circuit does not have jurisdiction initially to hear the judicial appeal of the Board's decision.

Two other courts of appeals have similarly held that courts of appeals do not have jurisdiction to hear the initial judicial review of Board decisions in DBA cases. In Home Indem. Co. v. Stillwell, 597 F.2d 87 (6th Cir. 1979), the Sixth Circuit concluded that it did not have jurisdiction to consider a direct appeal of the Board's decision in a DBA case. The court reasoned:

_____

**7** We note that if we adopted Lee's argument and concluded that section 21(c) of the LHWCA applies in DBA cases despite the express mandate to the contrary in section 3(b) of the DBA, we would essentially foreclose any judicial review of Board decisions in DBA cases. After the 1972 amendments, section 21(c) of the LHWCA provides that a party must appeal Board decisions to the "United States court of appeals for the circuit in which the injury occurred." 33 U.S.C.A. § 921(c) (emphasis added). In all cases arising under the DBA, however, the employee's death or injury occurs outside the United States. Therefore, if we applied section 21(c) of the LHWCA to DBA cases, as Lee urges, no court would have jurisdiction to hear the appeal.

8

> [Section 3(b) of the DBA] is unambiguous and it clearly requires judicial proceedings to review a compensation order made pursuant to the Defense Base Act to be conducted in the United States district court of the judicial district where the office of the appropriate deputy commissioner is located. The Defense Base Act does not provide for direct review of compensation orders in the court of appeals.

Id. at 89. The court noted that when Congress amended the LHWCA in 1972 to provide that initial judicial review would be at the court of appeals level, it did not, "whether through legislative oversight or intent, amend the judicial review provisions of the Defense Base Act." Id. at 90. The Sixth Circuit therefore found that it was bound to follow section 3(b) of the DBA until Congress dictated otherwise. Id.

In AFIA/CIGNA Worldwide v. Felkner, 930 F.2d 1111 (5th Cir. 1991), the Fifth Circuit similarly held that courts of appeals do not have jurisdiction to hear initial appeals of Board decisions in DBA cases. The court agreed with the Sixth Circuit and held:

> [F]ollowing administrative review by the [Board], the judicial review provisions under these two statutory schemes diverge: following [Board] review of a claim brought pursuant to the LHWCA, judicial review begins in the cognizant United States court of appeals; but, as unambiguously provided in section 3(b) of the DBA, judicial review of compensation orders under the DBA begins in the United States district court for the judicial district wherein is located the office of the deputy commissioner whose compensation order is to be reviewed. Therefore, in DBA cases, initial review of a compensation order is administrative to the [Board], and the [Board]'s decision is judicially reviewed by appeal to the appropriate district court.

Id. at 1114. The court refused to consider why Congress failed to amend section 3(b) of the DBA in 1972 when it amended the LHWCA. It held that "[a]bsent express legislative intent to the con-

9

trary, we are bound to interpret any unambiguous provision of the DBA according to its clear wording." Id. at 1116.

The Ninth Circuit, nevertheless, reached the opposite conclusion. In Pearce v. Director, Office of Workers' Compensation Programs, 603 F.2d 763 (9th Cir. 1979), the court held that courts of appeals do have jurisdiction to hear the initial judicial review of the Board's decision in DBA cases. The court acknowledged that Congress failed to amend the express language of section 3(b) of the DBA in 1972. Id. at 767. However, the court stated:

> To us, this i[s] not evidence of an intent to preserve the old procedure in Defense Base Act cases. Rather, it is evidence that Congress assumed that, under § 1 of the Defense Base Act [42 U.S.C.A. § 1651], the new procedures would apply and therefore inadvertently failed to amend § 3(b) [42 U.S.C.A. § 1653(b)].

Id. at 769. The court held that the DBA incorporated the 1972 amendments to the LHWCA and that the inconsistent reference in section 3(b) of the DBA to district courts "became inoperative; in effect, it was repealed." Id. at 770.

We find the reasoning of the Fifth and Sixth Circuits more persuasive. We have previously held that we must follow the plain language of statutory provisions, and we have refused to engage in the type of speculation that the Ninth Circuit resorted to in Pearce. For example, we have held:

> [W]e should give effect to the legislative will as expressed in the language. Generally, in examining statutory language, words are given their common usage. Courts are not free to read into the language what is not there, but rather should apply the statute as written. . . . The language being facially clear and "within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms."

United States v. Murphy, 35 F.3d 143, 145 (4th Cir. 1994) (citations omitted). Since section 3(b) of the DBA unambiguously provides that

10

initial judicial review of Board decisions in DBA cases lies in the district court, "jurisprudential modification of its plain statutory language would amount to judicial legislation." AFIA/CIGNA Worldwide, 930 F.2d at 1116.

We realize that our conclusion results in a somewhat cumbersome and duplicative review procedure in DBA cases and that Congress may not have made a conscious decision to create such a procedure. However, "it is not our function to correct Congressional oversight. . . . It is for Congress to eliminate any redundant steps insinuated by the 1972 amendments to the LHWCA." AFIA/CIGNA Worldwide, 930 F.2d at 1116-117. We must enforce section 3(b) according to its plain, unambiguous language. Accordingly, we conclude that we do not have jurisdiction to hear the instant appeal.

B.

Lee urges the Court not to dismiss his petition for review. He points out that the notice that the Board sent to his attorney instructed him to file a petition for review of the Board's order within sixty days in a United States court of appeals. Since the Board erroneously advised him regarding appellate jurisdiction, he argues that we should transfer the case to the United States District Court for the District of Maryland pursuant to 28 U.S.C.A. § 1631 (West 1994) rather than dismiss it.

Section 1631 authorizes courts to transfer appeals over which they lack subject matter jurisdiction to courts that properly have jurisdiction. Specifically, § 1631 provides as follows:

> Whenever . . . an appeal, including a petition for review of administrative action, is noticed for or filed with . . . a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such . . . appeal to any other such court in which the . . . appeal could have been brought at the time it was filed or noticed, and the . . . appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

11

28 U.S.C.A. § 1631 (emphasis added).

Courts have transferred cases pursuant to § 1631 "in the interest of justice" in cases where an administrative agency erroneously instructed a party regarding the appropriate appellate procedure. For example, in Ramey v. Bowsher, 9 F.3d 133 (D.C. Cir. 1993), a General Accounting Office ("GAO") employee claimed that the GAO had unlawfully retaliated against him for filing employment discrimination complaints. The GAO's Personnel Appeals Board found in favor of the employee and subsequently awarded him attorney's fees. Id. at 134. The employee was dissatisfied with the amount of fees awarded, and the Appeals Board erroneously instructed him that he could challenge its decision in the district court. Id. at 136. The employee therefore appealed to the United States District Court for the District of Columbia, but the court dismissed the case for lack of subject matter jurisdiction on the ground that the United States Court of Appeals for the Federal Circuit had exclusive jurisdiction over the employee's action. Id. at 133-34. The employee then appealed to the D.C. Circuit, which affirmed the district court's judgment. However, the D.C. Circuit transferred the case to the Federal Circuit"in the interest of justice." The court noted:

> [The employee] wound up in the wrong court for quite understandable reasons. A regulation of the [GAO's Personnel Appeals] Board and instructions attached to its opinions advise employees that they may challenge the Board's final decision in district court. We therefore affirm the judgment of the district court dismissing the complaint for lack of jurisdiction, but in the "interests of justice" we order the case transferred to the Court of Appeals for the Federal Circuit pursuant to 28 U.S.C. § 1631.

Id. at 136-37 (citation and footnote omitted).

The "interests of justice" in the instant case similarly dictate that we should transfer the case rather than dismiss it. The notice that the Board sent to Lee provided as follows:

> Pursuant to the provisions of Public Law 101-134 (Omnibus Appropriations for Fiscal Year 1996), . . . appeals from deci-

12

sions under the Longshore and Harbor Workers' Compensa-
tion Act . . . which have been pending before the Benefits
Review Board for more than one year, shall, if not acted
upon before September 12, 1996, be considered affirmed by
the Board and shall be considered the final order of the
Board for purposes of obtaining a review in the United
States courts of appeal.

According to our records, the appeal in the instant case has
now been pending at the Benefits Review Board for more
than one year. Therefore, consistent with Public Law 104-
134, this decision pending review by the Benefits Review
Board is considered affirmed and shall be considered the
final order of the Board for purposes of obtaining review in
the United States courts of appeal. Attached please find an
outline of the procedures for appealing to the courts of
appeal.

The Board neglected to attach the outline of appellate procedures that
it referred to. Lee's attorney therefore asked the Board to send him
the documents. On September 17, 1996, the Board faxed documents
to Lee's attorney that clearly stated that Lee should file a petition for
review within sixty days of the Board's decision with "the appropriate
United States Court of Appeals."**8**

Thus, like the plaintiff in Ramey, Lee filed his petition for review
of the Board's decision in the wrong court for very understandable
reasons. If we decided to dismiss Lee's appeal, he likely would be
time barred from filing an appeal in the district court. Therefore, "in
the interest of justice," we transfer the case to the United States Dis-
trict Court for the District of Maryland.

_____

**8** Neither party suggests that we must defer to the Board's construction
of appellate jurisdiction. As the Ramey court noted, "[i]nterpreting stat-
utes granting jurisdiction to Article III courts is exclusively the province
of the courts. Such statutes are administered by federal courts, not
administrative agencies, and agencies can bring no particular expertise to
the subject." Ramey, 9 F.3d at 136-37 n.7 (citation omitted).

13

III.

Accordingly, we conclude that we have no jurisdiction to hear the instant appeal, and we transfer Lee's petition for review to the United States District Court for the District of Maryland pursuant to 28 U.S.C.A. § 1631.**9**

DISMISSED AND TRANSFERRED

HALL, Circuit Judge, dissenting:

With all respect to my colleagues in the majority, I do not believe that Congress intended that workers unfortunate enough to have been injured in a foreign land have the final resolution of their claims take months or years longer than those filed by workers in this country who suffer identical injuries. That is, however, precisely the fate that awaits DBA claimants, who alone will be compelled to rehearse their arguments before the district court prior to the inevitable appeal.

"In the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters . . . the intention of the drafters, rather than the strict language, controls." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989) (citation and internal quotation marks omitted). Congress amended the LHWCA in 1972 to completely restructure the claims review process, and there is no substantial reason to believe that it did not intend the entire package to apply to the federal benefit programs incorporating the Act's provisions. Prior to 1972, claims made pursuant to the DBA were reviewed in the same manner as those arising under the LHWCA or the various other workers' compensation schemes; why would Congress have suddenly decided to treat these similar types of claims in a radically different manner?

The answer, of course, is that Congress did not so decide. It expected, and rightly so, that an amendment of the LHWCA would be, in essence, an amendment of all the compensation statutes; it

_____

**9** Since we rest our decision on jurisdictional grounds, we do not reach the parties' arguments on the merits of the petition for review.

14

likely did not anticipate that the DBA's provision"modifying" certain aspects of the LHWCA as it existed in 1941 would be construed to frustrate its continuing efforts, some thirty years later, to ensure that the review process is fairly and consistently administered with respect to all claimants.

I would adopt the approach of the Ninth Circuit in Pearce. See ante at 10. Claims under the DBA for injuries sustained overseas ought to be subject to initial judicial review in the court of appeals for the circuit within which is located the office of the District Director whose compensation order is at issue. Because this case involves an order of the District Director for the Fourth Compensation District, whose office is in Baltimore, Maryland, I believe that we have the jurisdiction to consider Mr. Lee's appeal.

I respectfully dissent.

15