**Raymond LEE, Petitioner,**

v.

**The BOEING COMPANY, INC.; Director, Office of Workers' Compensation Programs; and United States Department of Labor Benefits Review Board, Respondents.**

**No. Civ. AMD 97–3667.**

United States District Court,
D. Maryland.

May 19, 1998.

Lloyd S. Mailman, Timothy Augustus Dixon, Blum, Yumkas, Mailman, Gutman & Denick, P.A., Baltimore, MD, for Petitioner.

Lawrence Joseph Quinn, Tydings & Rosenberg, Baltimore, MD, Michael A. Barcott, Faulkner, Banfield, Doogan & Holmes, Seattle, WA, for Respondents.

## MEMORANDUM

DAVIS, District Judge.

This case presents a question of first impression: whether an employer's liability for workers' compensation benefits under the Defense Bases Act, 42 U.S.C. §§ 1651 *et seq.* ("DBA"), which provides for compensation payable to employees working in foreign countries who suffer an employment-related injury, is reduced by the value of benefits the injured employee receives under certain programs sponsored by the countries where the employment duties are performed (here, the Kingdom of Saudi Arabia).

Petitioner, Raymond Lee ("Lee") is an injured former employee of the Boeing Company, Inc. ("Boeing"). He seeks review of the affirmance by the United States Department of Labor Benefits Review Board ("the Board") of an order issued by an Administrative Law Judge ("ALJ"). The ALJ granted a motion for summary decision in

favor of Boeing, determining that Boeing was entitled to a credit under § 903(e) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*, as incorporated into the DBA, for payments received by Lee from the Saudi Arabian General Organization for Social Insurance ("General Organization").

The case was transferred to this court by the Fourth Circuit Court of Appeals, which determined that review of Board decisions under the DBA, unlike those under LHWCA, lies in the district court. *Lee v. Boeing Company, Inc.*, 123 F.3d 801 (4th Cir.1997). The parties' submissions have been carefully considered, and no hearing is deemed necessary. Local Rule 105.6 (D.Md.1997). For the reasons stated below, I shall affirm the decision of the Board.

### Standard of Review

The Court of Appeals reviews decisions of the Board for errors of law and for adherence to the statutory standard governing the review of an ALJ's factual determinations. *Newport News Shipbuilding & Dry Dock v. Parker*, 935 F.2d 20, 22–23 (4th Cir.1991). Jurisdiction having been transferred to this court, I will apply the same standard of review. The Board's affirmance of the ALJ's decision was not a substantive one, however, but rather, an affirmance by default. Pursuant to Public Law 104–314 (Omnibus Appropriations for Fiscal Year 1996), because the Board had taken no action on Lee's petition for review after 12 months, the ALJ's decision was deemed affirmed on September 12, 1996; it is considered the final order of the Board for purposes of judicial review. Thus, I must effectively review the initial determination by the ALJ, rather than the affirmance by the Board. In doing so, I apply the same standard of review. *Kellough v. Heckler*, 785 F.2d 1147, 1150 n. 3 (4th Cir. 1986).

### Facts and Procedural History

Before the ALJ, the parties submitted a joint statement of facts, from which this summary is drawn.

In March 1990, Lee was employed in the Kingdom of Saudi Arabia by United Support and Services Company ("USAS"), a Saudi Arabian limited liability company. USAS was a subcontractor for Boeing Middle East Limited, which was the prime contractor on a defense project jointly sponsored by the United States and Saudi Arabia, and administered by the United States Air Force.

Under the DBA, Boeing (but not USAS) was obliged to provide workers' compensation coverage to American employees, like Lee, working in Saudi Arabia. Under the "Occupational Hazards Branch" of the Saudi Arabian Social Insurance Law ("Saudi Social Insurance Law"), however, USAS was required to subscribe to and pay premiums to the General Organization for coverage (described below) of American employees such as Lee.

The General Organization is the Saudi governmental body which administers the Saudi Social Insurance Law. It is responsible, *inter alia*, for ensuring that claimants who incur employment-related injuries or illnesses receive medical care for such injuries and illnesses, daily allowances for temporary disabilities and monthly or lump-sum payments for permanent disabilities. All benefits paid by the General Organization under the Saudi Social Insurance Law come from the funds of the General Organization.

On March 20, 1990, Lee sustained catastrophic injuries in an automobile accident occurring in the course of his employment in Saudi Arabia. The accident left him paralyzed below the neck. Lee remained hospitalized in Saudi Arabia for a short period of time after the accident. On March 30, 1990, he was repatriated to a hospital in the United States. Since his repatriation, Boeing has been solely responsible for his medical benefits, the total costs of which exceed one million dollars and are continuing.

Since his repatriation, Lee has received and continues to receive from the General Organization monthly disability benefits, an allowance for the continuous help of others to carry on his usual activities of life (50% of the monthly disability compensation), plus an allowance for his dependent family members; these amounts total approximately $5330 per month. Boeing initially disputed its obligation to provide periodic disability compensation to Lee under the DBA, but rescinded

its initial notice of contravention. Consequently, in November 1991, the District Director for the Fourth Compensation District issued a compensation order. Thereafter, Boeing paid Lee permanent total disability benefits, first at the rate of $660.62 per week (followed by small increases in the weekly amounts), subject to future adjustment.

In November 1992, Boeing requested an informal conference with the District Director, which was held later that month. As a result, in February 1993, the District Director vacated the November 1991 compensation order, and held that any payments by Boeing under the prior order were deemed voluntary (and thus, no issue is presented of recoupment or set-off). Thereafter, Boeing discontinued payment of disability compensation benefits to Lee.

After Boeing discontinued payments to Lee, he requested a hearing in the Office of the ALJ. In January 1994, an ALJ issued an order granting Boeing's motion for summary decision. The ALJ determined that Boeing was entitled to a credit under § 903(e) of the LHWCA for payments received by Lee from the General Organization under the Saudi Social Insurance Law. In reaching this conclusion, the ALJ held that § 903(e) of the LHWCA is incorporated into the DBA, which governed the provision of benefits to Lee, and that the Saudi Social Insurance Law is a "workers' compensation law" within the meaning of § 903(e). He further held that the plain meaning of § 903(e) required that the amount paid to Lee by Boeing be credited by the amount paid to Lee by the General Organization.

Lee filed a timely petition for review from the entry of summary decision. The petition for review remained pending before the Board for more than one year. As stated above, because no action was taken by the Board within 12 months, the ALJ's decision was deemed affirmed and was considered the final order of the Board for purposes of obtaining judicial review. Lee filed a timely petition for review with the United States Court of Appeals for the Fourth Circuit, which transferred the matter to this court.

## Analysis

The case is usefully regarded as presenting three discrete issues: (1) whether § 903(e) of the LHWCA is incorporated into the DBA; (2) whether the Saudi Social Insurance Law is a "workers' compensation law" within the meaning of § 903(e) of the LHWCA; and (3) whether Boeing is entitled to a credit under § 903(e) of the LHWCA for the payments received by Lee under the Saudi Social Insurance Law.

(i)

■ I am persuaded that the ALJ's conclusion that § 903(e) of the LHWCA is incorporated into the DBA is correct. The DBA itself does not provide for credit to an employer against benefits for amounts received from another workers' compensation source; however, the LHWCA, which is expressly incorporated into the DBA, does so provide. Section 903(e) reads as follows in pertinent part:

> Notwithstanding any other provisions of law, *any amounts paid to an employee* for the same injury, disability, or death for which benefits are claimed under this Chapter pursuant to any other workers' compensation law or § 688 of Title 46 (relating to recovery for injury to or death of seamen) *shall be credited against any liability imposed by this Chapter.*

33 U.S.C. § 903(e) (emphases added). Thus, § 903(e) allows a credit against any liability imposed on an employer where the employee, for the same injury, is paid benefits under "any other workers' compensation law." The DBA provides as follows in pertinent part:

> Except as herein modified, the provisions of the Longshoremen's and Harbor Workers' Compensation Act, approved March 4, 1927 (44 Stat. 1424), *as amended,* shall apply in respect to the injury or death of any employee engaged in any [covered employment].

42 U.S.C. § 1651(a) (emphasis added). Thus, the DBA expressly incorporates the provisions of the LHWCA, except where those provisions are modified by the DBA. I find that no provision of the DBA expressly or implicitly modifies the plain and unequivocal dictate of § 903(e) of the LHWCA, and the

credit provision is therefore incorporated into the DBA.

Although the plain language of the respective statutes renders consideration of Congress' intent largely, if not entirely, inappropriate, nevertheless, this conclusion is consistent with the evident purpose of the relevant sections of the statutes.

The purpose of § 903(e), as reflected in the legislative history of the section, is to prohibit double recovery by claimants. Addressing the scope of the credit provision during the House adoption of the conference report on S.B. 38, the LHWCA Amendments Act of 1984, Representative Erlenborn stated:

> Importantly, as well, the substitute offsets longshore benefits for any other workers' compensation or Jones Act benefits concurrently received for the same injury. The conferees amended section 3(b) by substituting the words *"to an employee"* for *"by an employer"* in the phrase "any amounts paid by an employer for the same injury, disability or death...."

130 CONG.REC. 25905 (Sept. 18, 1984) (emphases added). This statement supports the argument that Congress' principal concern was that § 903(e) address the situation of duplicative benefits received by an injured employee, rather than any potential problem of double liability on an employer. Congress specifically considered and initially passed a provision focusing on whether duplicative benefits had been paid "by an employer," but later specifically rejected that construct, and the credit provision was altered to focus not on what the employer paid, but on what the employee received, regardless of the source of the payment. Indeed, the legislative history indicates that § 903(e) was intended to apply even when two different employers provided benefits for the same *injury:*

> The offset would, therefore, apply not only to instances where the employee received State workers' compensation, but also where he received benefits under the Federal Employees' Compensation Act, *and where the employee's nonlongshore claim is against an employer other than the one against whom he has filed a longshore claim.*

*Id.* (emphasis added).

■ Incorporation of the credit provision of the LHWCA into the DBA is also consistent with the aim of the DBA. The purpose of the DBA "was to provide substantially the same relief to outlying territories ... as the existing law affords employees in the United States...." *Royal Indemnity Co. v. Puerto Rico Cement Corp.,* 142 F.2d 237, 239 (1st Cir.), *cert. denied,* 323 U.S. 756, 65 S.Ct. 89, 89 L.Ed. 605 (1944), citing H.R.Rep. No. 77–1070. The argument that Congress did not intend the credit provision of § 903(e) to be incorporated in the DBA would be contrary to this intention, as it would mean that the DBA would not provide "substantially the same relief" as that afforded to injured workers in the United States. That is, in the absence of a credit provision such as § 903(e), Lee and similarly situated workers would receive compensation from Boeing and a foreign payor, whereas an employee injured in the United States would be limited to the receipt of full compensation (as measured by the DBA/LHWCA) from one federal benefits payor or a state benefits payor, but not both.

Moreover, contrary to Lee's argument, application of § 903(e) to workers injured in foreign lands is not inconsistent with § 1651(c) of the DBA, which makes the provision of benefits under the DBA the exclusive liability of the employer under federal law. Section 1651(c) of the DBA states:

> [t]he liability of an employer ... under this chapter shall be exclusive and in place of all other liability of such employer ... to his employees (and their dependents) coming within the purview of this chapter, under the workmen's compensation law of any State, Territory, or other jurisdiction....

42 U.S.C. § 1651(a).

Lee argues that because this "exclusivity provision" is more specific than the exclusivity provision of the LHWCA, 33 U.S.C. § 905(a), the exclusivity provision of the DBA "modifies" that of the LHWCA and makes the DBA the employer's exclusive liability. Thus, Lee argues, this amounts to an

implicit rejection of concurrent jurisdiction, rendering § 903(e) unnecessary to (and thus, not incorporated in) the DBA. I cannot accept this strained argument.

■ Although the DBA may be an employer's exclusive liability, it is not necessarily an employee's exclusive remedy. Thus, the only way to preclude double recovery by a claimant under either the DBA or the LHWCA is to allow the employer a credit for amounts received by the injured employee from another workers' compensation system. To accomplish this goal, § 903(e) must be deemed incorporated into the DBA, as the plain language of the statute reflects that it was, indeed.

In sum, the ALJ's conclusion that the credit provision of § 903(e) of the LHWCA is incorporated into the DBA is consistent with the plain words of the statutes, and is not undermined by any evidence of a contrary congressional intent. To be sure, the scant legislative history cited by the parties shows that Congress was specifically concerned with the interrelationship of state and federal compensation laws and not with the interplay between federal law on the one hand, and that of foreign lands, on the other hand. The plain (and expansive) language of § 903(e), however, stating that the section applies to "any other workers' compensation law," is unambiguous and must in mason be deemed to apply with equal force in respect to the workers' compensation laws of foreign lands. Accordingly, I find that the ALJ's conclusion that § 903(e) of the LHWCA is incorporated into the DBA is correct.

(ii)

■ I am also persuaded that the ALJ's conclusion that the Saudi Social Insurance Law is a "worker's compensation law" is a sound one. Lee argues that the Saudi Social Insurance Law is a public social insurance program and not a workers' compensation law. Although aspects of the Saudi Social Insurance Law share characteristics with public social insurance, in relevant and material ways the Saudi Social Insurance Law more closely resembles a workers' compensation law.

■ As noted by the ALJ, Prof. Larson provides guidance regarding what constitutes an American workers' compensation law:

> The typical workers' compensation act has these features: (a) the basic operating principle is that an employee is automatically entitled to certain benefits whenever he suffers a "personal injury by accident arising out of and in the course of employment" or an occupational disease; (b) negligence and fault are largely immaterial, both in the sense that the employee's contributory negligence does not lessen his rights and in the sense that the employer's complete freedom from fault does not lessen his liability; (c) coverage is limited to persons having the status of employee, as distinguished from independent contractor; (d) benefits to the employee include cash-wage benefits, usually around one-half to two-thirds of his average weekly wage, and hospital, medical and rehabilitation expenses; in death cases benefits for dependents are provided; arbitrary maximum and minimum limits are ordinarily imposed; (e) the employee and his dependents, in exchange for these modest but assured benefits, give up their common-law right to sue the employer for damages for any injury covered by the act; (f) the right to sue third persons whose negligence caused the injury remains, however, with the proceeds usually being applied first to reimbursement of the employer for the compensation outlay, the balance (or most of it) going to the employee; (g) administration is typically in the hands of administrative commissions; and, as far as possible, rules of procedure, evidence, and conflict of laws are relaxed to facilitate the achievement of the beneficent purposes of the legislation; and (h) the employer is required to secure his liability through private insurance, state-fund insurance in some states, or "self-insurance"; thus the burden of compensation liability does not remain upon the employer but passes to the consumer, since compensation premiums, as part of the cost of production, will be reflected in the price of the product.

ARTHUR LARSON, WORKERS' COMPENSATION LAW § 1.10 (1997). Drawing from Larson, I view the fundamental principles of a workers'

compensation law to be the automatic provision of benefits to an employee for any work-related injury, without regard to the fault of the employee or absence of fault of the employer, in an amount based upon the employee's wage, from a fund into which the employer must contribute for each employee. As disclosed by the expert evidence in the record, the Saudi Social Insurance Law has each of these characteristics.

The characteristics which the Saudi Social Insurance Law shares with public social insurance do not tip the scale against those which it shares with a workers' compensation law. Indisputably, the Saudi Social Insurance Law is more comprehensive than singular workers' compensation laws; it provides for non work-related disability and old age benefits. However, as noted by the ALJ, the relevant sections, those relating to work-related benefits, are clearly delineated and separable from the others. Furthermore, the role of the Saudi government in administering the Saudi Social Insurance Law is a role not unknown to the American workers' compensation system. Larson cites six states which require a government fund to administer benefits to injured workers. LARSON, *supra*, § 92.11. Finally, although the Saudi Social Insurance Law does not prohibit an employee from suing an employer for injuries caused by the employer under some circumstances, there are circumstances in which an employee would be entitled to sue an employer for work-related injuries despite workers' compensation laws in a domestic context (e.g., intentional injury by employer, failure of employer to provide safety devices). *See* LARSON, *supra*, § 67.21.

Weighing the factors of the Saudi Social Insurance Law which resemble workers' compensation laws against those that make it distinguishable from such laws, I am persuaded, as was the ALJ, that the better view declares the relevant portion of the Saudi Social Insurance Law a workers' compensation law. Thus, the credit provision of the LHWCA, as incorporated in the DBA, is triggered by the circumstances of the case at bar.

(iii)

Having found that § 903(e) is incorporated into the DBA and the Saudi Social Insurance Law, in relevant part, is a workers' compensation law, the plain meaning of § 903(e) necessarily leads to the conclusion that Boeing is entitled to credit for payments received by Lee from the General Organization. Lee claims benefits from both Boeing and the General Organization at the same time and for the same work-related injury. The benefits payable to Lee by the General Organization are benefits paid pursuant to a workers' compensation law. Accordingly, Boeing is entitled to a credit against its liability under the DBA in respect to the payments by the General Organization to Lee. In light of the far greater amount provided by the General Organization, Boeing's liability is wholly extinguished for so long as those payments continue.

## Conclusion

For the foregoing reasons, the decision of the United States Department of Labor Benefits Review Board shall be affirmed. An Order follows.