769 F.2d 66
 DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT of LABOR, Benefits Review Board
and John Morales, Claimants-Respondents,
v.
GENERAL DYNAMICS CORPORATION and Insurance Company of North
America, Employer-Carrier,
Insurance Company of North America, Carrier-Petitioner.
 No. 681, Docket 84-4135.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 22, 1985.
Decided July 29, 1985.
 
 Richard N. Curtin, Boston, Mass. (Parker, Coulter, Daley & White, Boston, Mass., of counsel), for carrier-petitioner.
 Stephen C. Embry, Groton, Conn. (O'Brien, Shafner, Bartinik, Stuart & Kelly, P.C., Groton, Conn., of counsel), for claimant-respondent John Morales.
 Samuel J. Smith, San Francisco, Cal. (Mullen & Filippi, San Francisco, Cal., of counsel), for amici curiae, American President Lines, Bethlehem Steel Corp., Continental Maritime of San Francisco, Inc., General Engineering and Machine Works, Inc., Marine Terminals, Inc., Matson Terminals and Service Engineering, Inc.
 Before VAN GRAAFEILAND and WINTER, Circuit Judges, and BARTELS, District Judge.*
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Insurance Company of North America (INA), an insurer of General Dynamics Corporation, appeals from a decision of the Benefits Review Board, dated July 27, 1984. The decision affirmed an Administrative Law Judge's decision and order under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 901 et seq., increasing from 10% to 20% John Morales' schedule award for permanent partial disability resulting from a knee injury. INA does not challenge the increase in percentage disability, but contends that the award should have been based on Morales' wage rate at the time of his injury in 1970 rather than his rate in 1979, when the increased disability became "manifest". We agree.
 
 
 2
 So far as we can glean the facts from a skimpy record, Morales was injured on February 4, 1970, when he slipped on the icy deck of a submarine and twisted his left knee. On August 31, 1970, Dr. Thomas Masterson surgically removed a torn medical meniscus from the knee. On the basis of Dr. Masterson's finding of a 10% schedule loss, INA made a voluntary lump-sum payment of $2,016, representing 28.8 weeks of compensation (10% of a total schedule loss of 288 weeks) at the then-maximum rate of $70 per week. See 33 U.S.C. Sec. 908(c)(2). Apparently, no order was issued by the Board.
 
 
 3
 A review of medical literature discloses that osteoarthritis is a common sequela of a meniscectomy. See, e.g., A. Johnston, M.D., J. Kalisch, LL.B. & L. Caswell, Medical Editor, Internal Derangements of the Knee and Other Soft Tissue Lesions, in Attorneys' Textbook of Medicine ch. 7A (1979); Howarth, A Textbook of Orthopedics 649 (1952). Morales' case was no exception. Within a year of Morales' surgery, Dr. Masterson observed x-ray evidence of narrowing of the joint space in Morales' knee with "some reactive changes which one would anticipate seeing developing the year after surgery." This condition continued to worsen, and, in 1979, Dr. Masterson wrote several letters to National Employers Co. informing that carrier that claimant "is showing many signs of post-traumatic arthritis developing as a sequel to his meniscectomy which was carried out about 9 years ago", and that the disability of claimant's knee will increase to 20%. National Employers informed claimant that it was not liable for any injuries sustained prior to May 1, 1975, and Dr. Masterson's correspondence therefore was forwarded to INA.
 
 
 4
 Following an informal conference before a claims examiner, a hearing was conducted by an Administrative Law Judge on February 5, 1981. The only evidence presented was claimant's testimony and several medical reports. In the ALJ's decision and order, he stated claimant's contention to be that "his degree of permanent partial disability has increased from 10% to 20%, as a result of the accident of February 4, 1970." The ALJ also found, based upon the parties' stipulation, that, at the informal conference, Morales "claimed an additional 10% disability due to his occupational injury of February 4, 1970." The ALJ concluded that Morales' "left knee is presently symptomatic of degenerative arthritis related to the original incident of February 4, 1970", and that this constitutes a permanent partial disability of 20%.
 
 
 5
 The ALJ then stated quite correctly that weekly wage normally is to be determined as of the date of injury, see 33 U.S.C. Sec. 910, but added that a claimant suffering from an occupational disease should have his average weekly wage calculated as of the date of the manifestation of the disease. Finding an analogy between occupational disease and, "as here", latent injury, the ALJ concluded that "inasmuch as the additional 10% loss of use of Claimant's leg manifested itself in August 1979, his average weekly wage should be calculated on the basis of his 1979, rather than his 1970 wages, when his injury first occurred." In affirming the ALJ's decision, the Benefits Review Board stated that the ALJ analogized the case to occupational disease and correctly "selected claimant's 1979 wage rate because the post-traumatic arthritis was not manifest until August 1979."
 
 
 6
 It is INA's position on appeal that claimant suffered but one injury, and that injury occurred in 1970; that therefore the award should have been based on the 1970 wage rate. Claimant contends, on the other hand, that he suffered two injuries, one in 1970 and the other in 1979. He terms the second an occupational disease which was either latent or the result of repetitive trauma incident to his climbing and squatting on the job.
 
 
 7
 Amici contend that the Board has, in effect, found post-traumatic arthritis to be an occupational disease, and that this was error. Amici argue that the Board should either have treated the case as a single injury case, see Lindsay v. Owens-Corning, 13 BRBS 922 (1981), or as a second injury case, i.e., a work-related aggravation of a preexisting disability, see Del Vacchio v. Sun Shipbuilding & Dry Dock Co., 16 BRBS 190 (1984).
 
 
 8
 It has now been generally established that, where the increased risks of a particular employment aggravate a preexisting physical condition, the resultant disability may be treated as an occupational disease. 1B Larson, The Law of Workmen's Compensation Sec. 41.63 at 7-423 (1982). No reason is apparent why this rule should not be applied where the preexisting condition is arthritic in nature. See Matter of Gilberti v. Joanne Garment Mfg. Co., 32 A.D.2d 865, 301 N.Y.S.2d 109 (1969) (mem.). However, there is neither evidence nor findings that osteoarthritis was a hazard peculiar to the nature of Morales' work or that Morales' work activities between 1970 and 1979 aggravated his preexisting knee condition. Dr. Masterson's reports, the only medical evidence in the record, treat claimant's condition as "post-traumatic arthritis developing as a sequel to his meniscectomy" of 1970.
 
 
 9
 The evidence before the ALJ and his findings based thereon place Morales' increased arthritic disability squarely within the statutory definition of accidental injury, i.e., "accidental injury ... and such occupational disease or infection ... as naturally or unavoidably results from such accidental injury." 33 U.S.C. Sec. 902(2). See Mississippi Shipping Co. v. Henderson, 231 F.2d 457 (5th Cir.1956); Cyr v. Crescent Wharf & Warehouse Co., 211 F.2d 454, 456-57 (9th Cir.1954). There is neither evidence nor findings of a second injury. Based on the findings that were made, Morales' additional 10% of disability had its origin solely in his 1970 injury. The existence vel non of this cause-and-effect relationship is not determined by whether Morales was "aware" of it, awareness being a factor introduced by Congress solely to extend the limitation period for the filing of claims. See Stancil v. Massey, 436 F.2d 274, 276-79 (D.C.Cir.1970). Congress has provided that "the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation". 33 U.S.C. Sec. 910. This provision is mandatory, see Belton v. Traynor, 381 F.2d 82, 85 (4th Cir.1967); it should not be amended by administrative decision, see Potomac Electric Power Co. v. Director, Office of Workers' Compensation Programs, U.S. Department of Labor, 449 U.S. 268, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980).
 
 
 10
 The decision of the Benefits Review Board is affirmed except for that portion which uses claimant's 1979 wage rate for his additional 10% disability award. The matter is remanded to the Board with instructions to fix the rate as of the date of Morales' injury, i.e., February 4, 1970. No attorneys' fees on this appeal.
 
 
 
 *
 District Judge of the United States District Court for the Eastern District of New York, sitting by designation