United States Court of Appeals,

Fifth Circuit.

No. 96-60767.

Donald LeBLANC, Petitioner,

v.

COOPER/T. SMITH STEVEDORING, INC., et al, Respondents.

Dec. 12, 1997.

Petition for Review of an Order of the Benefits Review Board.

Before REYNALDO G. GARZA, SMITH and WIENER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Appellant Donald LeBlanc appeals the final order of the Benefits Review Board ("BRB") affirming the order of an administrative law judge ("ALJ") calculating LeBlanc's disability compensation based on his weekly wage at the time of the accident causing his injury, rather than the date when LeBlanc's injury caused him to permanently leave his stevedoring job. The 1984 Amendments to the Longshore and Harbor Workers' Compensation Act ("LHWCA") added § 910(i), which provides that the statutory "time of injury" in cases of occupational disease is "the date on which the employee or claimant becomes aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of the relationship between the employment, the disease, and the death or disability." 33 U.S.C. § 910(i) (1997). Similarly, although the 1984 LHWCA Amendments did not change the limitations period for all compensable injuries, they did amend § 912(a) to require a one-year limitations period for claims of

1

disability resulting from an occupational disease, as opposed to the thirty day period previously required. 33 U.S.C. § 912.

This Court reviews decisions of the BRB for errors of law, but will disturb the factual findings of the ALJ only if they are not supported by substantial evidence. *Mendoza v. Marine Personnel Co., Inc.,* 46 F.3d 498, 500 (5th Cir.1995); *Munguia v. Chevron U.S.A., Inc.,* 999 F.2d 808, 810 (5th Cir.), *reh'g denied,* 8 F.3d 24 (5th Cir.1993), *cert. denied sub nom. Munguia v. Director, Office of Workers' Compensation Programs,* 511 U.S. 1086, 114 S.Ct. 1839, 128 L.Ed.2d 466 (1994). Under this standard, we hold that the ALJ correctly considered LeBlanc's disability to be the result of a traumatic injury rather than an occupational disease, and correctly considered LeBlanc's statutory time of injury to be the time of his accident rather than the date his disability became manifest.

*Factual and Procedural Background*

On November 2, 1987, while working for appellee Cooper/T. Smith Stevedoring, Inc. ("Cooper/T. Smith"), LeBlanc fell from a ship ladder and injured his lower back. At the time, LeBlanc's average weekly wage was $92.87. On doctor's orders, LeBlanc missed a few months of work but returned to work in March, 1988. LeBlanc continued working for Cooper/T. Smith until April, 1992, with intermittent absences due to back pain. In April, 1992, LeBlanc's doctor, Dr. Clifford, diagnosed LeBlanc's condition as degenerative facet disease in the lumbar region of the spine. Dr. Clifford attributed this condition to the 1987 accident and LeBlanc's continued work as a longshoreman. When he stopped working in 1992,

2

LeBlanc's average weekly wage was $439.65.

LeBlanc brought a claim for disability compensation under the LHWCA. 33 U.S.C. §§ 901-950 (1997). After a hearing, an ALJ found that LeBlanc's disability was causally related to his 1987 work injury and that his claim was timely, as LeBlanc was not aware of the potential impairment of his earning capacity until Dr. Clifford's April 1992 diagnosis. The ALJ further found that LeBlanc's residual wage earning capacity was $170 per week, based on the existence of suitable alternative employment as of August 25, 1993. The ALJ also concluded that LeBlanc had not tried with reasonable diligence to secure suitable alternative employment. As such, the ALJ held that LeBlanc could not establish total disability after August 25, 1993 and awarded LeBlanc permanent and total disability compensation from April 30, 1992, when LeBlanc reached maximum medical improvement, through August 30, 1993.

The ALJ then adjusted LeBlanc's residual earning capacity downward to $141.11, its equivalent as of the 1987 accident.[1] LeBlanc's adjusted residual earning capacity of $141.11 was greater than his average weekly wage of $92.87 at the time of the accident. Based on this disparity, the ALJ found that LeBlanc had suffered no loss of wage earning capacity and was, therefore, not entitled to disability compensation after August 25, 1993, the date Cooper/T. Smith established suitable alternative employment.

The BRB affirmed, adopting the ALJ's order as the BRB's final

---

[1]The ALJ used the percentage increase in the National Average Weekly Wage of the U.S. Department of Labor to adjust LeBlanc's residual earning capacity downward by seventeen percent.

order.[2]  LeBlanc appeals to this Court, arguing that the ALJ erred by considering his disability to be the result of a traumatic injury rather than an occupational disease, for which compensation benefits would have been based on LeBlanc's average weekly wage of $439.65 at the time his disability caused him to permanently stop working as a stevedore.  Alternatively, LeBlanc argues that, even if his disability did result from a traumatic injury, the ALJ erred by computing LeBlanc's compensation based on his average weekly wage at the time of his accident, rather than his higher average weekly wage at the time his disability became manifest.

*Discussion*

I. *Occupational Disease vs. Traumatic Injury*

The LHWCA uses an injured employee's average weekly wage "at the time of the injury" as the basis for computing that employee's compensation.  33 U.S.C.A. § 910.  If a longshoreman suffers from an "occupational disease," however, the LHWCA treats the time of injury as "the date on which the employee or claimant becomes aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of the relationship between the employment, the disease, and the death or disability."  33 U.S.C.A. § 910(i).  This distinction is crucial:  if LeBlanc's disability is the product of an occupational disease, his benefits

---

[2]Pursuant to the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104-134, 110 Stat. 1321 (1996), because LeBlanc's appeal had been pending before the BRB for more than one year, the ALJ's order is "considered affirmed by the Benefits Review Board ... and shall be considered the final order of the Board for purposes of obtaining a review in the United States courts of appeals."  *Id.*

4

will be based on his 1992 average weekly wage of $439.65 rather than his 1987 average weekly wage of $92.87, which is lower than his residual earning capacity, thereby precluding any recovery after suitable alternative employment became available.

LeBlanc's disability did not result from a disease peculiar to his line of work and, therefore, does not result from an occupational disease for LHWCA purposes.  A disability is not the result of an occupational disease for purposes of the LHWCA unless the disease is peculiar to the nature of the claimant's particular line of work.  *McNeelly v. Sheppeard,* 89 F.2d 956, 957 (5th Cir.1937).  The Fifth Circuit established this precedent early in *McNeelly,* noting that an occupational disease is "one usually or frequently contracted by workers in [a particular] occupation." *Id.* at 957;  *see also Grain Handling Co. v. Sweeney,* 102 F.2d 464, 465 (2d Cir.) ("[C]overage must be limited to diseases resulting from working conditions particular to the calling."), *cert. denied,* 308 U.S. 570, 60 S.Ct. 83, 84 L.Ed. 478 (1939).  This distinction serves the important purpose of ensuring that "[c]ompensation under the [LHWCA] is not the equivalent of health or life insurance." *McNeelly,* 89 F.2d at 958;  *accord Sweeney,* 102 F.2d at 465. Although Congress has not explicitly defined occupational disease for LHWCA purposes, "[t]he generally accepted definition of an occupational disease is "any disease arising out of exposure to harmful conditions of the employment, when those conditions are present in a peculiar or increased degree by comparison with employment generally.' " *Gencarelle v. General Dynamics Corp.,* 892

5

F.2d 173, 176 (2d Cir.1989) (quoting 1B A. Larson, THE LAW OF WORKMEN'S COMPENSATION § 41.00, at 7-353). LeBlanc's injury does not fit within this definition because his activities of lifting, bending, and climbing ladders are typical of the manual labor required by many blue collar occupations, as opposed to being peculiar to LeBlanc's particular line of work.

Additionally, LeBlanc's condition, degenerative facet disease, is qualitatively different from diseases within the recognized class of occupational diseases. Courts have limited the class of occupational diseases to include only those diseases contracted through exposure to dangerous substances. *See Gencarelle,* 892 F.2d at 176; *see also Bath Iron Works Corp. v. Director, Office of Workers' Compensation Programs,* 506 U.S. 153, 160-61, 113 S.Ct. 692, 697-98, 121 L.Ed.2d 619 (1993) (distinguishing occupational hearing loss from traditional occupational diseases such as asbestosis). In noting that hazardous conditions of employment must be the cause of an occupational disease for LHWCA purposes, the Second Circuit opined that "[t]raditionally, these hazardous conditions have been of an external, environmental nature such as asbestos, coal dust, or radiation." *Gencarelle,* 892 F.2d at 176. In contrast, the ALJ found that LeBlanc's condition was causally related to his 1987 work injury. This injury resulted from a traumatic physical impact, not from exposure to any external, environmentally hazardous conditions of employment, which takes LeBlanc's condition beyond the scope of the traditional class of occupational diseases.

Although some courts have recognized repetitive motion or cumulative trauma injuries as occupational diseases, *see Gencarelle,* 892 F.2d at 177 (collecting cases), extending the traditional class of occupational diseases to include LeBlanc's condition would be contrary to the legislative intent underlying the 1984 LHWCA Amendments. The legislative history accompanying the 1984 LHWCA Amendments makes it clear that Congress intended that the "awareness" requirement for statute of limitations and time of injury purposes in occupational disease cases "should in all but the most unusual of circumstances, be founded on specific medical advice relating to the *hazards of exposure* to a given toxic substance in the employer's workplace, and the relationship between the disease suffered by the employee, that toxic substance, and the workplace." HOUSE REP. NO. 98-570, pt. I, at 11 (1983), *reprinted in* 1984 U.S.C.C.A.N. 2734, 2744 (emphasis added). This legislative history is replete with references to occupational diseases resulting from *exposure* to toxic substance or harmful physical agents, but nowhere refers to diseases causally related to traumatic physical impact or recurring activities. The point of this amendment was to remove procedural limitations and timing barriers where a disability is the result of hazardous conditions not known to be harmful or to exist at the time of exposure. *See Bath Iron Works,* 506 U.S. at 157, 113 S.Ct. at 695-96 ("With the 1984 amendments, Congress authorized the payment of benefits to retirees suffering from occupational diseases that become manifest only after retirement."). We reject LeBlanc's argument that

falling six feet off of a ladder qualifies as the type of exposure to hazardous conditions that Congress intended to include within the scope of "occupational diseases," therefore, we are left with the task of analyzing LeBlanc's claim as a disability resulting from traumatic injury.

II. *Time of Injury*

According to § 910, "the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation...." 33 U.S.C. § 910. Having decided that the ALJ correctly considered LeBlanc's disability to be the result of a traumatic injury rather than an occupational disease, we still must decide whether the ALJ correctly based LeBlanc's compensation on his average weekly wage at the time of his 1987 accident rather than his higher average weekly wage in 1992, when Dr. Clifford diagnosed him with degenerative facet disease. We hold that the ALJ correctly considered LeBlanc's statutory "time of injury" to be the time of his 1987 accident and, accordingly, we affirm the ALJ's order in all respects.

The statutory time of injury for traumatic injuries under the LHWCA is the time of the accident causing the injury. The plain meaning of the statute accords with common sense: the time of injury means the time of the event causing the injury. We will not read a "time of manifestation" exception into the LHWCA absent some affirmative guidance from Congress on the matter.

What Congress has said on the matter, at least by implication, supports interpreting the time of injury requirement as referring

8

to the time of the accident causing the injury. In 1983, in the context of a disability caused by asbestosis, the Ninth Circuit held that "for purposes of determining the proper rate of compensation, the time of injury under ... the LHWCA is defined as the date when the occupational disease manifests itself through a loss of wage-earning capacity." *Todd Shipyards Corp. v. Black,* 717 F.2d 1280, 1291 (9th Cir.1983), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984). With the 1984 LHWCA Amendments, Congress codified this holding by adding § 910(i). By the plain language of § 910(i), Congress chose to expressly limit the applicability of this "manifestation" theory to occupational diseases, thereby simultaneously precluding its applicability to traumatic injury cases. 33 U.S.C. § 910(i).

Given the history of the 1984 LHWCA Amendments, extending the manifestation theory beyond the scope of occupational diseases is a matter for the legislative branch rather than the judiciary. Accordingly, to the extent that the Ninth Circuit applied the manifestation theory to a traumatic injury in *Johnson v. Director, Office of Workers Compensation Programs,* 911 F.2d 247 (9th Cir.1990), *cert. denied sub nom., Todd Pacific Shipyards Corp. v. Director, Office of Workers' Compensation Programs,* 499 U.S. 959, 111 S.Ct. 1582, 113 L.Ed.2d 646 (1991), we respectfully disagree. As noted, the 1984 LHWCA Amendments extended the Ninth Circuit's manifestation theory, *see Todd Shipyards,* 717 F.2d at 1291, solely to occupational diseases. Congress chose not to qualify traumatic injuries, even those that get worse over time, for this treatment,

9

therefore, the Ninth Circuit approach is contrary to the legislative intent regarding the extent of benefits available under the LHWCA.

This Court's recent decision in *Bourgeois v. Avondale Shipyards, Inc.,* 121 F.3d 219 (5th Cir.1997) is not inconsistent with our holding in this case. In *Bourgeois,* the claimant's disability was the ultimate result of a broken wrist. *Id.* at 220. The ALJ applied the manifestation theory and calculated the claimant's compensation "as of the time of disability." *Id.* We noted that "[t]he lower court's method of calculating compensation "at the time of disability' under § 910 of the LHWCA is a fair and reasonable method of determining compensation which we will not disturb on appeal." *Id.* at 221. We also noted, however, that the employer in *Bourgeois* had "already conceded this point." *Id.* As such, the issues presented in *Bourgeois* did not require us to rule on the propriety of applying the manifestation theory to traumatic injuries, and we merely declined to do so.

In contrast, the present case squarely presents this issue and we hold that the manifestation theory is not applicable to traumatic injury claims under the LHWCA. Accordingly, the statutory time of injury in such cases is the time of the accident that causes the injury.

In so deciding, we agree with the Second Circuit, which, in a similar case, held that the BRB must "fix the rate as of the date of [claimant's] injury," rather than as of the date of the manifestation of later problems. *Director, Office of Workers*

*Compensation Programs v. General Dynamics Corp.,* 769 F.2d 66, 68 (2d Cir.1985). This court, in *dictum,* has said the same thing. In *Castorina v. Lykes Bros. S.S. Co.,* 758 F.2d 1025, 1029 (5th Cir.), *cert. denied,* 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985), we reasoned that "[i]n cases involving traumatic injury, the effects of which are most often felt within a short period of time, the date of injury for determining the applicable law under the LHWCA is the date the trauma actually occurred."

### Conclusion

The ALJ correctly considered LeBlanc's disability to be the result of a traumatic injury rather than an occupational disease. As such, the ALJ correctly based LeBlanc's compensation on his average weekly wage at the time of the 1987 accident rather than the time of his 1992 diagnosis. Accordingly, we AFFIRM the ALJ's order, which the BRB affirmed and adopted as its final order.

AFFIRMED.