08-2515-ag
*Service Employees Int'l v. Workers Comp.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**
August Term 2009

(Argued: October 7, 2009                                      Decided: February 18, 2010)

Docket No. 08-2515-ag

---

SERVICE EMPLOYEES INTERNATIONAL, INC.,
INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,

<u>Petitioners</u>,

- v. -

DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAM,

<u>Respondent</u>,

JESSE BARRIOS,

<u>Claimant-Respondent</u>.

---

Before: MINER, CABRANES, <u>Circuit Judges</u>, and RAKOFF,[*] District Judge.

Petition for Review of a Final Order of the Benefits Review Board of the Department of Labor affirming the decision of an Administrative Law Judge awarding compensation under the Defense Base Act for temporary total disability and temporary partial disability, the Board having determined that substantial evidence supported the finding that respondent's eye condition was related to his employment in Iraq; that the condition was disabling; and that he was entitled to the maximum compensation in effect for 2006 to compensate for his permanent total disability.

Confronting for the first time the question of our jurisdiction to entertain petitions for review under the Defense Base Act, we conclude that we have such jurisdiction and deny review on the merits.

---

[*] The Honorable Jed Rakoff, District Judge, United States District Court for the Southern District of New York, sitting by designation.

Judge Cabranes dissents in a separate opinion.

JERRY R. MCKENNEY, Legge, Farrow, Kimmitt, McGrath & Brown, L.L.P., Houston, TX, for Petitioner.

BARRY H. JOYNER, Attorney, Gregory F. Jacob, Solicitor of Labor, Rae Ellen Frank James, Acting Associate Solicitor, Mark A. Reinhalter, Counsel for Longshore, Matthew W. Boyle, Attorney, United States Department of Labor, Washington, DC, for Respondent.

Dale W. Pedersen, Colorado Springs, CO, for Claimant-Respondent.

MINER, Circuit Judge:

Petitioners Service Employees International, Inc. and its insurer, Insurance Company of the State of Pennsylvania (together the "Employer"), seek review of a Final Order of the Benefits Review Board (the "Board"), an entity established within the office of respondent director, Office of Workers' Compensation Programs, United States Department of Labor. In the petition for review, the Employer challenges the award of compensation to claimant-respondent Jesse Barrios under the Defense Base Act for temporary total disability and temporary partial disability as a consequence of an eye condition sustained or aggravated during his employment in Iraq. Agreeing with the Administrative Law Judge, the Board concluded that the eye condition was related to Barrios' employment; that the condition was disabling; and that Barrios was entitled to the maximum compensation rate in effect for 2006 for his temporary and total disability.

We confront for the first time the question of our jurisdiction to entertain petitions for review under the Defense Base Act. For the reasons that follow, we conclude that we have such jurisdiction and deny review on the merits.

## BACKGROUND

Barrios began working for Service Employees International, Inc. in Iraq on October 24, 2004. His employer was under a contract with the United States Army to provide support services for troops stationed in Iraq. Barrios was employed to drive a fuel tank truck and to deliver jet and diesel fuel and gasoline throughout Iraq. In connection with his employment, Barrios underwent a physical examination and completed a medical questionnaire in which he noted a history of burning, tearing, and redness of the eyes. In Iraq, Barrios worked an average of thirteen hours a day and seven days a week in hot, dry, dusty, and windy conditions. Not long after his arrival in Iraq, Barrios found himself using significantly more eye drops than he had used prior to taking up his employment there. On November 28, 2005, his eye symptoms became so severe that he sought attention at a medical facility and complained of dry and itchy eyes that became more irritated while he was driving and tired. The facility referred Barrios to the International Clinic in Kuwait, where he was examined on December 7, 2005, by Dr. Abdussammad K. Abdullah, consultant in ophthalmology.

According to his report, dated December 19, 2005, Dr. Abdullah diagnosed Barrios with "[m]ild dry eye both eyes[;] Pterygium in both eyes." Pterygium is defined as "a triangular fleshy mass of thickened conjunctiva occurring usu[ally] at the inner side of the eyeball, covering part of the cornea, and causing a disturbance of vision." WEBSTER'S THIRD NEW INT'L DICTIONARY 1835 (1981). Dr. Abdullah specifically found "bilateral pterygium at the nasal limbus encroaching about 1.5 mm on to the cornea in the right eye and 0.5 mm on the left eye. The pterygium in the right eye is showing degenerative changes. . . . [Barrios'] visual acuity was 20/20 in OD and 20/15 in OS. The retinal examination was within normal limits." The physician prescribed "use [of] lubricant eye drops . . . and protective sun glasses" and "pterygium

excision in the right eye" and concluded his report as follows: "The exact [cause] of Pterygium is unknown, but is more common in people exposed to dry weather, chronic irritation of eyes and exposure to sunlight."

Although Barrios returned to his employment, he continued to complain of eye irritation and strain and expressed his desire to undergo the excision prescribed by Dr. Abdullah. Ultimately, his employer removed him from driving duties and returned him to the United States on medical leave for treatment of his pterygium, which the employer characterized as a non-work-related illness. Barrios departed Iraq on December 19, 2005. On January 5, 2006, Barrios consulted with Dr. Charles D. McMahon, an ophthalmologist in Colorado Springs, Colorado. In his report of January 19, 2006, Dr. McMahon essentially confirmed the diagnosis of Dr. Abdullah, specifically noting that "[t]he right pterygi[um] is larger than the left pterygi[um] and both are starting to threaten vision." He further noted that Barrios had 20/20 vision in each eye and that tear production appeared normal. He recommended "having the pterygia removed with a conjunctival graft to prevent a recurrence of this same condition," proceeding with the right eye first and the left eye two to three months later.

With respect to the origins of Barrios' eye condition, Dr. McMahon opined as follows:

> Dry eye syndrome is commonly associated with the development of pterygia. Pterygia are caused by exposure to dry and dusty conditions and intense sunlight such as [Barrios] experienced in Iraq. In addition to environmental conditions an underlying genetic predilection seems to be necessary to develop these growths. If this were not the case pterygia would be much more common in people who live in desert climates. I suspect that Jess[e] had the genetic trait for pterygia and it was brought out by his exposure to the environment in Iraq.

At the Employer's request, Barrios' medical records were reviewed by Dr. Charles A. Garcia, an ophthalmologist in Houston, Texas. Although Dr. Garcia did not examine Barrios, he

accepted the diagnosis of the physicians who did examine him and gave an opinion as to the nature and source of the eye condition in a report dated August 25, 2006:

> A pterygium is a fibrovascular growth and extends from the conjunctiva onto the cornea. The pterygium may cause change in visual acuity by distorting the cornea. While it is true that there is a higher incidence of pterygia in patients who are exposed to extreme sunlight over extended periods of time, as well as dry or irritating conditions, this normally is a situation caused by exposure for many years. Mr. Barrios appears to have been employed in the Middle East for approximately one year and I do not feel that the pterygia were caused by living in the Middle East, though there is some possibility that they could have been made worse by chronic dryness and irritation.

Barrios never underwent the excision procedure for pterygia and, in May 2006, began employment as a gasoline truck driver for Groendyke Transport, Inc. in Colorado. His claims for benefits for the period he was totally disabled from employment and for the losses suffered as the result of reduced earnings thereafter were controverted by the Employer on the ground that his eye condition was not related to his employment in Iraq. Barrios therefore filed a claim for disability benefits under the provisions of the Longshore and Harbor Workers' Compensation Act, as amended, 33 U.S.C. § 901 et. seq., and as extended by the Defense Base Act, 42 U.S.C. § 1651 et. seq.

By decision and order dated March 13, 2007, following a formal hearing, Administrative Law Judge ("ALJ") Russell D. Pulver of the United States Department of Labor issued a compensation order as follows: that the Employer pay to Barrios compensation for temporary total disability from December 20, 2005, through May 21, 2006, based on an average weekly wage of $1,717.61, using a compensation rate of $1,143.92; compensation for temporary partial disability commencing May 22, 2006, at the rate of $740.59 per week; all outstanding medical bills related to Barrios' disability plus reasonable and necessary medical care and treatment; and

interest on unpaid compensation payments from the date such payment became due until the actual date of payment. In a subsequent amending order, the ALJ determined that Barrios' compensation rate for temporary total disability was subject to a weekly maximum of $1,073.64, the rate in effect for fiscal year 2006.

The Employer appealed the decision and order awarding benefits, as amended, to the Benefits Review Board, which affirmed the determination of the ALJ in all respects in an unpublished per curiam decision and order issued on December 19, 2007. Specifically, the Board "affirm[ed] [the ALJ's] conclusion [that] claimant established that his pterygia is related to his employment in Iraq as it is supported by substantial evidence." The Board noted that the ALJ credited the opinion of Drs. Abdullah and McMahon over that of Dr. Garcia but observed that even Dr. Garcia expressed "'some possibility' that [Barrios'] pterygia was 'made worse' by the chronic dryness and irritation encountered in Iraq."

With respect to the Employer's challenge to the ALJ's finding that Barrios' eye condition was not disabling because of a lack of medical evidence that he was disabled from working and because he actually obtained employment as a gas tank driver in Colorado, the Board referred to Barrios' "uncontradicted testimony . . . that employer refused to allow claimant to continue working in Iraq after December 19, 2005, due to his eye condition on the basis that it jeopardized the safety of his co-workers." Accordingly, the Board found it established that claimant was totally disabled from December 20, 2005, to May 21, 2006, when he found lower paying employment in Colorado, rendering the employer liable for the diminution in wage-earning capacity "[a]s claimant's usual work was unavailable to him due to his work injury." Finally, the Board found that the ALJ "properly found claimant's compensation subject to the maximum

-6-

compensation rate in effect for the fiscal year 2006 of $1,073.64."

**ANALYSIS**

I.  Of Jurisdiction

We first address the question of our jurisdiction over the petition filed in this court by the Employer, recognizing the split in Circuit authority as to whether the initial review of decisions of the Benefits Review Board under the Defense Base Act lies in the courts of appeals or in the district courts. Compare Pearce v. Director, Office of Workers' Comp. Programs, 647 F.2d 716, 720 (7th Cir. 1981), and Pearce v. Director, Office of Workers' Comp. Programs, 603 F.2d 763, 770 (9th Cir. 1979) (holding that jurisdiction for direct judicial review under the Act is in the circuit courts of appeals), with ITT Base Servs. v. Hickson, 155 F.3d 1272, 1275 (11th Cir. 1998); Lee v. Boeing Co., 123 F.3d 801, 806 (4th Cir. 1997); AFIA/CIGNA Worldwide v. Felkner, 930 F.2d 1111, 1116 (5th Cir. 1991); Home Indem. Co. v. Stillwell, 597 F.2d 87, 89 (6th Cir. 1979) (holding that the courts of appeals lack such jurisdiction). For the reasons that follow, we side with the circuits that conclude that jurisdiction for direct review lies in the courts of appeals.

The Defense Base Act ("DBA") was enacted in 1941 to establish a scheme of workers' compensation for injuries sustained by employees in their employment by private employers on military bases or national defense projects outside the continental United States. See 42 U.S.C. § 1651. To accomplish this purpose, Congress extended the already existing provisions of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), enacted in 1927, to provide workers' compensation coverage for those engaged in maritime employment. See Stillwell, 597 F.2d at 88. The extension was accomplished by section 1 of the DBA, which reads as follows:

Except as herein modified, the provisions of the Longshore . . . Act, approved March 4, 1927 (44 Stat. 1424), as amended, shall apply in respect to the injury or death of any employee [covered by the Defense Base Act].

42 U.S.C. § 1651(a).

Prior to its amendment in 1972, § 21(b) of the LHWCA provided for initial review of administrative compensation orders "in the federal district court for the judicial district in which the injury occurred." 33 U.S.C. § 921(b) (1970). Because injuries compensable under the DBA occurred only in overseas locations and not within any judicial district in the United States, § 3(b) of the DBA included the following specific provision:

Judicial proceedings provided under section 18 and 21 of the Longshore and Harbor Workers' Compensation Act [33 U.S.C. §§ 918, 921] in respect to a compensation order made pursuant to [the DBA] shall be instituted in the United States [D]istrict [C]ourt of the judicial district wherein is located the office of the deputy commissioner whose compensation order is involved if his office is located in a judicial district, and if not so located, such judicial proceedings shall be instituted in the judicial district nearest the base at which the injury or death occurs.

42 U.S.C. § 1653(b).

In 1972, Congress enacted § 21(c) of the LHWCA in its current form, providing for initial review of compensation claims in a newly created administrative board (the Benefits Review Board) and for judicial review in the courts of appeals: "Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred." 33 U.S.C. § 921(c). The 1972 legislation made no change in DBA § 3(b), which continued to provide that judicial proceedings be conducted in accordance with the LHWCA and in the district court.

We recognize that some of our sister circuits find no ambiguity in the unamended

provision for judicial review under the DBA.  See, e.g., Hickson, 155 F.3d at 1275 ("Reading the plain language of the [DBA], we conclude that we lack jurisdiction over the instant petition for review."); Lee, 123 F.3d at 805 ("Section 3(b) of the DBA clearly and unambiguously provides that a party adversely affected by the administrative resolution of a DBA claim must file a petition for review in the United States [D]istrict [C]ourt."); Stillwell, 597 F.2d at 89 ("[Section 3(b) of the DBA] is unambiguous and it clearly requires judicial proceedings to review a compensation order . . . to be conducted in the United States [D]istrict [C]ourt.").  We disagree. We do not see § 3(b) of the DBA as a statute containing language having "a plain and unambiguous meaning with regard to the particular dispute in the case" such that further inquiry is unnecessary.  Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997).

Ambiguity is apparent on the face of the statute.  Read literally, § 3(b) of the DBA states: "Judicial proceedings provided under section[] . . . 21 of the Longshore and Harbor Workers' Compensation Act [which now provides for initial review in the courts of appeals] shall be instituted in the United States [D]istrict [C]ourt."  Initial review obviously cannot lie in both courts.  Just as obviously, judicial review in a DBA case cannot lie in a "court of appeals for the circuit in which the injury occurred," in accordance with the 1972 amendments to the LHWCA, 33 U.S.C. § 921(c), because the DBA covers injuries sustained during employment in overseas bases.

As demonstrated by the foregoing, the test for ambiguity easily is met here "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  Robinson, 519 U.S. at 341.  In departing from the conclusions reached by our sister circuits that have found the jurisdictional provision unambiguous in vesting review

jurisdiction under the DBA in district courts, we agree with the circuits that have read the disputed provision as ambiguous and have interpreted it to vest jurisdiction in the courts of appeals. This divergence of opinion in the circuits also speaks to the ambiguity of the statute, since the divergence itself makes it "difficult indeed to contend that the [statutory language] is unambiguous with regard to the point at issue here." See Smiley v. Citibank, 517 U.S. 735, 739 (1996).

Having identified ambiguity in the disputed language, it now falls to us to interpret the meaning of the jurisdictional provision at issue.

> We can best reach the meaning here, as always, by recourse to the underlying purpose, and with that as a guide, by trying to project upon the specific occasion how we think persons, actuated by such a purpose, would have dealt with it, if it had been presented to them at the time. To say that that is a hazardous process is indeed a truism, but we cannot escape it, once we abandon literal interpretation — a method far more unreliable.

Borella v. Borden Co., 145 F.2d 63, 64–65 (2d Cir. 1944) (Learned Hand, J.). More recently, we have stated: "Where the language is ambiguous, we focus upon the 'broader context' and 'primary purpose' of the statute." Castellano v. City of N.Y., 142 F.3d 58, 67 (2d Cir. 1998) (quoting Robinson, 519 U.S. at 345–46).

The primary and underlying purpose for the enactment of the Defense Base Act in 1941 was to extend the benefits of the existing federal workers' compensation program governing maritime employees to those employed at military bases outside the United States. In the broader context, the idea was to establish a unified scheme applicable to both classes of employees. The intention that the DBA track the provisions of the LHWCA is manifest in the DBA requirement that "[e]xcept as herein modified, the provisions of the Longshore and Harbor Workers'

Compensation Act, . . . as amended . . . , shall apply in respect to the injury or death of any employee engaged in any [covered] employment." 42 U.S.C. § 1651(a). The only modification in the DBA was made to account for the difference in overseas and domestic employment. Initial judicial review under both statutes originally was by proceedings "in the federal district in which the injury occurred." But in the case of the DBA, it was necessary to add the provision for district court jurisdiction in the judicial district nearest the base at which the injury occurred.

It is significant to our analysis of purpose and context that § 3(b) of the DBA authorizes "[j]udicial proceedings under . . . sections 18 and 21 of the Longshore and Harbor Workers' Compensation Act in respect to a compensation order made pursuant to the [DBA]." 42 U.S.C. § 1653(b). At the time of the enactment of the DBA, the language designating district courts as the loci of initial judicial proceedings was superfluous, since § 21 of the LHWCA, which § 3(b) incorporated, already provided for district court jurisdiction. The only possible reason for the designation, therefore, was to identify the proper judicial district where a worker injured overseas could bring the proceeding — "the judicial district nearest the base at which the death or injury occurred." 42 U.S.C. § 1653(b).

The 1972 amendments to the LHWCA changed the procedure for the adjudication of compensation claims by providing for initial review of administrative determinations in a newly created Benefits Review Board, and review of Board orders were to be had "in the United States court of appeals for the circuit in which the injury occurred." See 33 U.S.C. § 921. The legislation accomplished the purpose of expediting the processing of compensation claims and permitting appeals of agency decisions directly to the courts of appeals without the extra step of district court proceedings. That this change in the review process was intended to apply to DBA

-11-

claims is manifest in the DBA provision that the LHWCA "as amended shall apply in respect to the injury or death of any employee [covered under the Defense Base Act]" except as modified by the DBA. 42 U.S.C. § 1651(a).

No modification of the DBA has been made since its inception as a statute of general reference, designed to adopt the LHWCA and subsequent amendments to it. See Krolick Contracting Corp. v. Benefits Review Board, 558 F.2d 685, 688 (3d Cir. 1977). Since the provision for court of appeals review in "the circuit in which the injury occurred" clearly is inapplicable to the DBA, it remains that the location of the "office of the Deputy Commissioner [now designated the District Director] whose compensation order is involved," as set forth in the DBA, establishes the pertinent geographical jurisdiction of the appropriate court of appeals. It is because the District Director who served the orders in this case is located in New York that we have jurisdiction here.

Finally, we note our agreement with the dissenting opinion of Judge Hall in Lee, 123 F.3d at 808:

> I do not believe that Congress intended that workers unfortunate enough to have been injured in a foreign land have the final resolution of their claims take months and years longer than those filed by workers in this country who suffered identical injuries. . . . [Congress] expected, and rightly so, that an amendment of the LHWCA would be, in essence, an amendment of all the compensation statutes; it likely did not anticipate that the DBA's provisions "modifying" certain aspects of the LHWCA as it existed in 1941 would be construed to frustrate the continuing efforts, some thirty years later, to insure that the review process is fairly and consistently administered with respect to all claimants.

As does Judge Hall, we think that a literal reading of the statute at issue is inconsistent with the intent of those who framed it. See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989).

II.    Of the Merits

Our inquiry on review of the decision of the Benefits Review Board is limited to whether the Board "made any errors of law and whether substantial evidence supports the ALJ's findings of fact." Rainey v. Director, Office of Workers' Comp., 517 F.3d 632, 634 (2d Cir. 2008). Substantial evidence is such evidence as a "reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (internal quotation marks omitted). We review questions of law de novo and mixed questions of law and fact de novo or under the clearly erroneous standard "depending on whether the question is predominantly legal or factual." Barscz v. Director, Office of Workers' Comp. Programs, 486 F.3d 744, 749 (2d Cir. 2007) (internal quotation marks omitted).

The Employer asserts that Barrios' pterygia were not caused by his employment in Iraq. Relying on Dr. Garcia's report, the Employer argues that it takes an exposure period of years for pterygia to develop as a result of environmental conditions and notes that Barrios was in Iraq only for thirteen months. The Employer claims that there is no medical basis for a finding that the pterygia caused any of Barrios' symptoms and, thus, that the pterygia have never impaired Barrios' ability to work. Furthermore, it asserts that Barrios' symptoms are attributable to the dry eye syndrome he had before he worked in Iraq. Finally, the Employer alleges that Barrios' eye conditions were not disabling, because no doctor has conclusively established that pterygia or dry eyes impaired his ability to work.

However, substantial evidence supports the ALJ's finding that Barrios' pterygia were caused or aggravated by his working conditions in Iraq. There is no evidence that Barrios was diagnosed with pterygia prior to commencing work in Iraq. The ALJ rationally inferred that

-13-

working thirteen hours a day and seven days a week is equivalent to an environmental exposure accumulating over several years of normal work. Furthermore, the reports of Drs. Abdullah and McMahon present substantial evidence linking Barrios' pterygia to his working conditions in Iraq. Even Dr. Garcia, the Employer's expert, opined that there was "some possibility" that the pterygia could have been worsened by the chronic dryness and irritation consequent to employment in Iraq.

Under the DBA, "disability is an economic concept; the extent of disability cannot be measured by medical condition alone." Pietrunti v. Director, Office of Workers' Comp. Programs, 119 F.3d 1035, 1041 (2d Cir. 1997). Moreover, a claimant establishes an inability to perform his usual employment if a claimant's job is no longer available to him after his injury. McBride v. Eastman Kodak Co., 844 F.2d 797, 799 (D.C. Cir. 1988). The Employer did not allow Barrios to resume driving after his examination by Dr. Abdullah on December 7, 2005, on the basis that his eye condition jeopardized the safety of his co-workers. The Employer denied Barrios' request to have eye surgery in Kuwait, or to work light-duty until his next scheduled leave in February 2006. Instead, the Employer characterized Barrios' eye condition as non-work-related, sent Barrios home to receive treatment of his pterygia on leave-without-pay status, and ultimately discharged him because he did not timely receive treatment for his eye condition at his own expense. Accordingly, Barrios established his inability to return to his usual employment due to his injury notwithstanding the absence of medical evidence that his work was entirely precluded.

Lastly, the Employer argues that the proper compensation rate should be computed based on the maximum compensation rate for fiscal year 2005, rather than 2006, because, according to

the Employer, Barrios was injured in fiscal year 2005. The ALJ and the Board calculated the compensation rate based on the time of the onset of Barrios' disability, on December 22, 2005, which was in fiscal year 2006.

The date of disability onset, not of injury, determines the applicable compensation rate in occupational cases. Bd. Order at 5–6; see Todd Shipyards Corp. v. Black, 717 F.2d 1280, 1291 (9th Cir. 1983) (It is the time at which a claimant's disability due to occupational disease manifests itself through a loss of wage-earning capacity that controls his compensation rate.). The Employer relies on LeBlanc v. Cooper/T.Smith Stevedoring, Inc., 130 F.3d 157, 161 (5th Cir. 1997), which states that the claimant's compensation rate is based on the time of injury, rather than the onset of disability. That case, however, related to traumatic injury claims, rather than those arising out of occupational disease. Id. Additionally, it is not clear that Barrios' injury even occurred in fiscal year 2005, as all of the events relevant to Barrios' claim occurred between November 28, 2005, and December 19, 2005, dates that fall within fiscal year 2006. Accordingly, since Barrios' disability onset was during fiscal year 2006, we agree with the Board's decision that Barrios' temporary total disability compensation rate equals $1,073.64.

III.    Conclusion

We can identify no error of law in the Board's decision and find that substantial evidence supports its determination. Having found that we have jurisdiction over this proceeding, we therefore deny review on the merits.

*Service Employees Int'l v. Dir., Office of Workers' Comp. Programs*, No. 08-2515-ag (Argued Oct. 7, 2009)

JOSÉ A. CABRANES, *Circuit Judge*, dissenting:

I agree with the majority that the compensation award at issue was supported by substantial evidence, and thus I have no quarrel with its resolution of the merits of this petition. I disagree, however, with its conclusion that initial judicial review of petitions under the Defense Base Act ("DBA"), 42 U.S.C. § 1651 *et seq.*, lies with the courts of appeals. Because that disagreement goes to the question of our jurisdiction over this petition, I write separately.

As the majority recognizes, the question of whether initial judicial review of compensation decisions under the DBA lies with the courts of appeals or the district courts has divided our sister circuits. The Ninth Circuit has held that jurisdiction in the courts of appeals is appropriate, *Pearce v. Dir., Office of Workers' Comp. Programs*, 603 F.2d 763, 771 (9th Cir. 1979) (finding jurisdiction in the courts of appeals but transferring the case to the Seventh Circuit),[1] whereas the Sixth Circuit, along with every circuit to have considered the question since *Pearce*, has held that initial review lies in the district courts, *see Home Indem. Co. v. Stillwell*, 597 F.2d 87, 90 (6th Cir. 1979); *ITT Base Servs. v. Hickson*, 155 F.3d 1272, 1275 (11th Cir. 1998); *Lee v. Boeing Co.*, 123 F.3d 801, 806 (4th Cir. 1997); *AFIA/CIGNA Worldwide v. Felkner*, 930 F.2d 1111, 1116 (5th Cir. 1991); *see also Hice v. Dir., Office of Workers' Comp. Programs*, 156 F.3d 214, 218 (D.C. Cir. 1998) (dictum) ("[While we are] inclined to agree with the Fourth, Fifth, and Sixth Circuits, we need not decide that issue for ourselves."); *Dyncorp Int'l v. Mechler*, No. 08 Civ. 8309, 2009 WL 303329, at *4 (S.D.N.Y. Feb. 9, 2009) (agreeing

---

[1] As the majority notes, the Seventh Circuit, upon accepting transfer of the *Pearce* case, appears to have agreed with the Ninth Circuit's holding. It did so, however, without any analysis and by stating simply: "We approve the holding of the Ninth Circuit that jurisdiction lies in the Seventh. In any event, both that holding and the decision that transfer was appropriate in lieu of dismissal and filing anew are now *res judicata*." *Pearce v. Dir., Office of Workers' Comp. Programs*, 647 F.2d 716, 721 (7th Cir. 1981). In light of the fact that the Seventh Circuit deemed the Ninth Circuit's holding to be *res judicata*, its approval of that holding was mere *dicta*. It is therefore questionable whether the Seventh Circuit would consider the rule set forth in *Pearce* to be the law of the Circuit.

1

"with those courts that have held that judicial review under the DBA is by the district court").

Today, the majority joins with the Ninth Circuit in holding that initial review under the DBA lies with the courts of appeals. In my view it does so in error. The DBA is unambiguous and clearly requires initial review of compensation decisions in the district courts.

The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon [of statutory construction] is also the last: judicial inquiry is complete." *Conn Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (internal quotation marks and citations omitted); *accord United States v. Salim*, 549 F.3d 67, 78 (2d Cir. 2008). Here, the relevant language of the DBA provides in part that "[j]udicial proceedings provided under sections 18 and 21 of the Longshore and Harbor Workers' Compensation Act in respect to a compensation order made pursuant to this chapter shall be instituted *in the United States district court*."[2] 42 U.S.C. § 1653(b) (emphasis added). Because there is no ambiguity in that language, our inquiry should be complete, and I believe the majority errs in proceeding further to consider the statute's primary purpose.

The majority concludes that the DBA's judicial review provision is ambiguous because the DBA, which was enacted in 1941, incorporates the provisions of the Longshore and Harbor Workers' Compensation Act ("Longshore Act"), and the Longshore Act was amended in 1972 to

---

[2] The full provision reads as follows:

> Judicial proceedings provided under sections 18 and 21 of the Longshoremen's and Harbor Workers' Compensation Act in respect to a compensation order made pursuant to this Act shall be instituted *in the United States district court* of the judicial district wherein is located the office of the deputy commissioner whose compensation order is involved if his office is located in a judicial district, and if not so located, such judicial proceedings shall be instituted in the judicial district nearest the base at which the injury or death occurs.

42 U.S.C. § 1653(b) (emphasis added).

2

provide for initial judicial review in the courts of appeals. *See* 33 U.S.C. § 921(c). According to the majority, the DBA, "[r]ead literally," now states: "Judicial proceedings provided under section[ ] . . . 21 of the Longshore and Harbor Workers' Compensation Act [which now provides for initial review in the courts of appeals] shall be instituted in the United States [D]istrict [C]ourt." Maj. Op. at 9 (brackets in original). Because "[i]nitial review obviously cannot lie in both courts," the majority concludes that the DBA is ambiguous. *Id.*

I agree, of course, that "[i]nitial review . . . cannot lie in both courts." *Id.* My disagreement with the majority is that, as I read it, the DBA does *not*, in fact, provide for review in both courts; it unambiguously provides for review only in the district courts. Although the DBA incorporates the provisions of the Longshore Act, it does so only insofar as those provisions are consistent with the DBA. The DBA states explicitly that "*[e]xcept as herein modified*, the provisions of the Longshore and Harbor Workers' Compensation Act . . . , as amended, shall apply." 42 U.S.C. § 1651(a) (emphasis added). In other words, to the extent that the language of the DBA and the Longshore Act are in conflict, the language of the DBA controls. *See Felkner*, 930 F.2d at 1113 ("If the DBA provides a specific modification then the provisions of the DBA control."). There is, therefore, no genuine ambiguity in the terms of the DBA, and, in my view, the majority errs in looking beyond the plain language of the statute.

I recognize that the divergence in the judicial review procedures of the DBA and the Longshore Act may be the product of Congressional mistake or oversight. *See Lee*, 123 F.3d at 805 (noting that "Congress may have simply made an oversight in failing to amend . . . the DBA" along with the Longshore Act). As other courts addressing this question have explained, however, "we cannot speculate about what Congress' intent might have been when faced with the unambiguous language of a statute." *Hickson*, 155 F.3d at 1275. Nor is it "our function to correct Congressional

3

oversight, particularly when such oversight does not lead to impossible or absurd results." *Felkner*, 930 F.3d at 1116-17; *cf. Dir., Office of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 142 (1995) (Ginsburg, J., concurring) (noting that amendments to the Longshore Act unintentionally "put the administration of the [Black Lung Benefits Act] and the [Longshore Act] out of sync" but recognizing that while "[c]orrecting a scrivener's error is within this Court's competence, . . . only Congress can correct larger oversights of the kind presented" (citation omitted)). Requiring that DBA claims proceed in the district courts—as they did for over thirty years prior to the 1972 amendment to the Longshore Act—can hardly be considered an absurd result. Accordingly, we are required to adhere to the plain language of the statute.

For the foregoing reasons, I respectfully dissent.