**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 27 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RONALD E. COMPTON, | No. 14-71470 |
| Petitioner, | BRB No. 13-0388 |
| v. | |
| DYNCORP INTERNATIONAL, INC.; et al., | MEMORANDUM[*] |
| Respondents. | |

On Petition for Review of an Order of the
Benefits Review Board

Submitted May 9, 2016[**]
San Francisco, California

Before: FARRIS, O'SCANNLAIN, and CHRISTEN, Circuit Judges.

Ronald Compton petitions for review of a decision of the Benefits Review

Board ("BRB") upholding the administrative law judge's ("ALJ") decision

denying Compton's claim for benefits under the Longshore and Harbor Workers'

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]    The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Compensation Act, 33 U.S.C. §§ 901-950, as extended by the Defense Base Act, 42 U.S.C. §§ 1651–54. We have jurisdiction under 33 U.S.C. § 921(c). *See Pearce v. Dir., Office of Workers' Comp. Programs, U. S. Dep't of Labor*, 603 F.2d 763, 770 (9th Cir. 1979). We deny the petition.

1. The BRB correctly concluded that substantial evidence supports the ALJ's determination that DynCorp rebutted the presumption of compensability. First, the "zone of special danger" doctrine is not relevant here because it governs whether an injury occurs in the course of employment, an issue not in dispute. *See O'Leary v. Brown-Pac.-Maxon*, 340 U.S. 504, 506 (1951). The issue here is whether Compton suffered injuries "arising out of" that course of employment, which the "zone of special danger" doctrine does not answer. *See id.* Second, to rebut the presumption, DynCorp was not required to provide evidence sufficient to "rule out" the possibility that Compton's employment caused or aggravated his injuries. That standard is inconsistent with the statutory requirement that the presumption be rebutted with "substantial evidence to the contrary." 33 U.S.C. § 920; *see also Schwirse v. Dir., Office of Workers' Comp. Program*, 736 F.3d 1165, 1172 (9th Cir. 2013).

Third, the testimony offered by DynCorp's medical experts was substantial evidence that Compton's heart failure resulted from a degenerative condition and

2

was not caused or aggravated by his employment. DynCorp's experts also presented substantial evidence that Compton's rheumatoid arthritis was not caused by his employment. Though one of the experts recognized that stress, such as the stress Compton experienced in Afghanistan, could trigger episodes of arthritis, the expert concluded the stress had resolved. This is substantial evidence that any arthritic episode Compton experienced from stress in Afghanistan is no longer part of his injury and therefore cannot support his claim for benefits. *See* 33 U.S.C. § 903(a).

2. The BRB correctly concluded that substantial evidence supports the ALJ's determination that, weighing the evidence as a whole, Compton's heart condition and rheumatoid arthritis are not related to his employment and do not support a claim for benefits. *See Haw. Stevedores, Inc. v. Ogawa*, 608 F.3d 642, 648, 651 (9th Cir. 2010). The ALJ reasonably relied on the rebuttal medical evidence that indicated no causal relationship existed between Compton's claimed injuries and his employment, and reasonably discounted the evidence suggesting otherwise.

When evaluating Compton's heart condition, the ALJ reasonably discounted Dr. Goldberg's opinion. Dr. Goldberg based his opinion on a lack of evidence regarding degeneration in Compton's heart, yet the pathology report found myxoid

3

degeneration.  The ALJ reasonably found the analysis in the pathology report more reliable than the operative report, which was based only on a visual examination during surgery.  The ALJ also reasonably found Compton's testimony to be only modestly credible.  Compton's testimony often differed from the medical records, and various doctors questioned his ability to accurately recount medical histories.

When evaluating Compton's rheumatoid arthritis, the ALJ reasonably discounted Dr. Vaz's opinion because Dr. Vaz based his opinion on Compton's own self-reports.

3.     The BRB correctly concluded that the ALJ did not err by addressing Compton's chronic obstructive pulmonary disease ("COPD") as a symptom of Compton's heart condition or rheumatoid arthritis, and not as an independent condition.  Compton waived an independent claim for COPD.  First, he did not identify COPD as a basis for his benefits claim in his initial application.  Second, when the ALJ asked for clarification as to what injuries Compton alleged, he described COPD only as a related condition.  Third, he did not brief COPD in any significant way before the ALJ, and his briefing framed it as a condition related to his heart condition.

**PETITION DENIED.**

4

*Compton v. DynCorp Int'l, Inc.*, 14-71470

O'SCANNLAIN, Circuit Judge, specially concurring:

I agree with the Court that the Board of Review properly upheld the ALJ's determination that DynCorp rebutted the presumption of compensability and that Compton's injuries are not ultimately compensable. I also agree with the Court that binding circuit precedent in *Pearce v. Dir., Office of Workers' Comp. Programs*, 603 F.2d 763, 770 (9th Cir. 1979), interprets the relevant statutes as granting us jurisdiction over Compton's petition. I write separately to express my view that *Pearce*'s conclusion regarding our jurisdiction to entertain petitions for review under the Defense Base Act is mistaken and should be overruled. Instead, I believe statutory authority directs that jurisdiction over petitions such as Compton's lies in the first instance with the federal district courts.

Compton's petition proceeds via the Defense Base Act ("DBA"), 42 U.S.C. § 1651 *et seq.* The DBA provides workers' compensation coverage for private employees working on military bases or other defense projects outside the United States by extending the provisions of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.* *See AFIA/CIGNA Worldwide v. Felkner*, 930 F.2d 1111, 1112–14 (5th Cir. 1991) (explaining the

history of the DBA). Specifically, the DBA provides that the provisions of the LHWCA "as amended, shall apply" to employees covered under the DBA "[e]xcept as herein modified." 42 U.S.C. § 1651(a).

As originally enacted, both the LHWCA and the DBA lodged review of compensation awards in federal district courts, but differed as to the specific district court to which a party ought to petition. The LHWCA provided that compensation orders issued under the Act could be challenged by lodging a petition "in the federal district court for the judicial district in which the injury occurred." 33 U.S.C. § 921(b) (1970). The DBA stated that "[j]udicial proceedings provided under section 18 and 21 of the [LHWCA] . . . in respect to a compensation order made pursuant [to the DBA] shall be instituted in the United States district court of the judicial district wherein is located the office of the deputy commissioner whose compensation order is involved . . . ." 42 U.S.C. § 1653(b). In other words, the LHWCA specified that petitions should be brought to the district court associated with the site of the injury, while the DBA directed petitioners to the district court associated with the relevant deputy commissioner.

Confusion arose when Congress amended the LHWCA in 1972. That amendment to Section 21 of the LHWCA created the Benefits Review Board, and lodged review in the courts of appeals over compensation orders concerning

2

individuals engaged in maritime employment: "Any person adversely affected . . . by a final order to the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred." 33 U.S.C. § 921(c). However, Congress did *not* amend the companion section of the DBA. Thus, that section continues to read: "Judicial proceedings provided under section 18 and 21 of the [LHWCA] . . . in respect to a compensation order made pursuant [to the DBA] shall be instituted *in the United States district court* of the judicial district wherein is located the office of the deputy commissioner whose compensation order is involved." 42 U.S.C. § 1653(b) (emphasis added). It is undisputed that jurisdiction over Compton's petition is conferred by § 1653(b). Yet by its plain terms, that provision states that Compton should have petitioned to the district court, rather than our court. And indeed, no fewer than five circuits have relied on this plain language to conclude that courts of appeals lack jurisdiction to review DBA petitions. *See ITT Base Servs. v. Hickson*, 155 F.3d 1272, 1275 (11th Cir. 1998); *Hice v. Dir., Office of Workers' Comp. Programs*, 156 F.3d 214, 218 (D.C. Cir. 1998) (dictum); *Lee v. Boeing Co.*, 123 F.3d 801, 806 (4th Cir. 1997); *Felkner*, 930 F.2d at 1116; *Home Indem. Co. v. Stillwell*, 579 F.2d 87, 89 (6th Cir. 1979).

3

Our circuit is not one of these. In *Pearce*, we reasoned that although the § 1653(b) unequivocally lodges review of DBA petitions in district courts, Congress silently "repealed" this unambiguous language by amending section 21 of the LHWCA and allowing review of LHWCA claims by the courts of appeal. 603 F.2d at 770. We speculated that because the original purpose of § 1653(b) was to provide an alternate means for identifying the proper reviewing court since many DBA claims originate overseas, Congress must have "inadvertently failed to amend" the DBA when it altered the LHWCA, and thus that we should ignore the phrase "district court" in § 1653(b). *Id.* at 769.

That is a highly dubious proposition. We do not have a "roving license . . . to disregard clear language simply on the view that . . . Congress 'must have intended' something broader." *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2034 (2014). Section 1653(b) could not be clearer in vesting review over DBA petitions in "the United States *district court*." 42 U.S.C. § 1653(b) (emphasis added). And if that plain language weren't clear enough, § 1651 explicitly states that the DBA incorporates the LHWCA *only* insofar as the LHWCA accords with the DBA. *See* 42 U.S.C. § 1651 (stating that the LHWCA shall apply to the DBA "[e]xcept as herein modified"); *see also Serv. Emps. Int'l, Inc. v. Dir., Office of Workers Comp. Program*, 595 F.3d 447, 458 (2d Cir. 2010) (Cabranes, J.,

4

dissenting) (observing that under § 1651 "to the extent that the language of the DBA and the Longshore Act are in conflict, the language of the DBA controls"). Even assuming Congress may have meant for DBA petitions to be directed to circuit courts as LHWCA claims now are, we "do not revise legislation . . . just because the text as written creates an apparent anomaly." *Bay Mills*, 134 S. Ct. at 2033. "If Congress enacted into law something different from what it intended, then it should amend the statute to conform to its intent." *Lamie v. U.S. Trustee*, 540 U.S. 526, 542 (2004). Any other approach—and especially the one we employed in *Pearce*—"aggrandizes judicial power and encourages congressional lassitude." *King v. Burwell*, 135 S. Ct. 2480, 2506 (2015) (Scalia, J., dissenting). In my view, neither vice needs any additional encouragement from us.

With these observations in mind, I concur in the Court's decision.